The STATE of Ohio, Appellee,

v.

FIELDS, Appellant.

The STATE of Ohio, Appellee,

v.

ADAMS, Appellant.

[Cite as *State v. Fields* (1994), 97 Ohio App.3d 337.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–930638 and C–930652.

Decided Sept. 28, 1994.

340

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellee in case No. C–930638.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Gwendolyn M. Schratt,* Assistant Prosecuting Attorney, for appellee in case No. C–930652.

*Geoffrey P. Damon,* for appellant Samuel Z. Fields.

*Sand, Stidham & Bernard* and *Chuck R. Stidham,* for appellant Joseph L. Adams.

GORMAN, Judge.

## I. FACTS AND PROCEEDINGS

Defendants-appellants, Samuel Z. Fields and Joseph L. Adams, appeal convictions for aggravated robbery and robbery of a Burger King restaurant and robbery of a Burger King employee. In their assignments of error they raise, either individually or collectively, the following issues: (1) allied offenses of similar import, (2) ineffective assistance of trial counsel, (3) violations of the Fourth Amendment, (4) manifest weight and sufficiency of the evidence, (5) evidence improperly admitted at trial, and (6) violations of the R.C. 2945.71, speedy-trial provisions. As to the allied-offense assignments, the judgments entered are reversed in part and the cases remanded to the trial court solely for correction of the sentences imposed. On all other assignments of error presented by both parties, we affirm the judgments of the trial court.

It is undisputed that at about 3:00 a.m. on October 2, 1992, Amberley Village police officer Joseph Fryman encountered Fields and Adams sitting in an unlit

automobile. In response to the officer's questions, they said they were searching for Galbraith Road, which, the officer noted, was sixty to eighty feet from the parked vehicle. By a radio inquiry to headquarters, Fryman learned that Adams had outstanding arrest warrants for traffic violations. That prompted Fryman to take Fields and Adams into custody. Pursuant to the department's re-cite policy, at approximately 3:20 a.m., the Amberley police released Fields and Adams with instructions that Adams appear in court for the tickets.

Shortly after Fields and Adams were released by the Amberley police, a robbery occurred at the Burger King restaurant at Reading and Galbraith roads. Kathy Kilpatrick, a Burger King assistant manager, was attending to accounting duties in her office when two men approached. One of the men grabbed her, pulled her to her feet, and hit her in the jaw. The other shoved a metal money box into her ribs before pulling it from her grasp. They both dragged Kilpatrick into the restaurant's walk-in cooler and barricaded her and several other employees in the compartment. Before being closed in the cooler, Kilpatrick observed her assailants: a tall, African–American male wearing a dark ski mask and thick glasses accompanied by a shorter man wearing a glove.

At approximately 3:40 a.m., Officer Fryman heard a police radio broadcast identifying two suspects involved in the Burger King robbery. The description matched his recollection of Fields and Adams, whom he had just released. Fryman then put out a broadcast in which he included the names of Fields and Adams, a description of their automobile, and the vehicle's license number. From these broadcasts, Cincinnati police officer Thomas Slade identified the wanted automobile traveling near the corner of North Bend and Daly roads. Slade enlisted the assistance of another officer, and, within moments, they arrested Fields and Adams. In the automobile they found Kilpatrick's purse, her prescription bottle, and $1,200 in coins and bills belonging to Burger King.

Fields and Adams were charged with robbery and aggravated robbery of Burger King and robbery of Burger King's employee, Kilpatrick. The jury found them guilty of all charges. On count one, the Burger King aggravated robbery, the court sentenced them to fifteen to twenty-five years. On counts two and three, the Burger King robbery and the Kilpatrick robbery, the court sentenced them to twelve to fifteen years for each crime. The sentence for count one ran consecutively to the sentences for counts two and three. The sentences for counts two and three ran concurrently.

## II. ASSIGNMENTS OF ERROR

A. Allied Offenses of Similar Import

Fields and Adams first argue that they received multiple sentences in violation of R.C. 2941.25, which prohibits a trial court from imposing more than

one sentence for allied offenses of similar import.[1] Neither Fields nor Adams raised this issue when sentenced by the trial court. Therefore, it is waived. See, generally, *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640, 646.

An error that is waived by failure to object will not be noticed by the court of appeals unless it is plain error. Crim.R. 52(B). Under plain error analysis, the court determines (1) whether there is an error, (2) whether it is plain error, and (3) whether the defendant was prejudiced. *United States v. Olano* (1992), 507 U.S. ——, ——, 113 S.Ct. 1770, 1777–1778, 123 L.Ed.2d 508, 519–520 (using "forfeiture" rather than waiver). In plain error analysis, the court determines prejudice by asking whether the error created a manifest injustice or seriously affected the "fairness, integrity or public reputation of [the] judicial proceedings." *Id.* at ——, 113 S.Ct. at 1779, 123 L.Ed.2d at 521–522; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. The court will not reverse unless the outcome of the trial "clearly would have been otherwise." *Long* at paragraph two of the syllabus; but see *Olano*, 507 U.S. at ——, 113 S.Ct. at 1778, 123 L.Ed.2d at 520 (caveat on outcome determination).

The court's power under Crim.R. 52(B) is discretionary. *Id.*, 507 U.S. at ——, 113 S.Ct. at 1778–1779, 123 L.Ed.2d at 520–522; *Long*, 53 Ohio St.2d at 95, 7 O.O.3d at 180, 372 N.E.2d at 807, fn. 5; *State v. Craft* (1977), 52 Ohio App.2d 1, 2, 6 O.O.3d 1, 1–2, 367 N.E.2d 1221, 1223; Crim.R. 52(B). The court in *Comen* did not exercise its discretion to address plain error in the case of allied offenses. This court, however, previously has addressed allied-offense issues that were waived below. *State v. Jennings* (1987), 42 Ohio App.3d 179, 537 N.E.2d 685; *State v. Gordon* (Mar. 18, 1992), Hamilton App. No. C–910375, unreported, 1992 WL 52723; *State v. Carter* (Dec. 19, 1990), Hamilton App. No. C–890787, unreported, 1990 WL 209676; *State v. Elyel* (Mar. 21, 1984), Hamilton App. No. C–830403, unreported, 1984 WL 14107.[2] Also, since *Comen*, other courts of appeals have addressed waived allied-offense issues. See, generally, *State v. Morgan* (1992), 80 Ohio App.3d 150, 152–153, 608 N.E.2d 1114, 1115–1116; *State v. Dehler* (May 26, 1994), Cuyahoga App. Nos. 65006 and 66020, unreported, 1994 WL 236298; *State v. Ventresca* (Mar. 26, 1993), Lake App. No. 92–L–091, unreported, 1993 WL 130044. Therefore, under Crim.R. 52(B), it is within our discretion to address the merits of an allied-offense issue.

---

1. Fields's assignment of error five; Adams's first assignment of error.

2. But see *State v. Bailey* (1992), 78 Ohio App.3d 394, 604 N.E.2d 1366, in which this court refused to address as plain error two rape sentences from two separate acts of cunnilingus against the same victim. This court subsequently declined to apply *Bailey* in *State v. Gordon* (Mar. 18, 1992), Hamilton App. No. C–910375, unreported, 1992 WL 52723.

### 1. Was the sentencing error?

In applying the allied offenses statute, the Ohio Supreme Court has outlined a two-step analysis.[3] First, the court must determine whether the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other. *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, 522. The first step requires the court to examine the facts of the alleged crimes in light of the statutory elements to see if the commission of one crime will result in the commission of the other. *State v. Shirley* (May 26, 1993), Hamilton App. No. C–920535, unreported, 1993 WL 321527. For instance, even though the elements of the crimes are not the same, under certain circumstances, the commission of felonious sexual penetration may result in the commission of rape. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 435, 613 N.E.2d 225, 228–229.[4]

In the Burger King counts in the indictment, Field and Adams were charged with both aggravated robbery and robbery. The elements of aggravated robbery under R.C. 2911.01(A)(2) are, essentially, theft and infliction or attempted infliction of serious physical harm. The elements of robbery are theft and force. R.C. 2911.02. If a person inflicts serious physical harm upon another, the offender uses force against the victim. *State v. Washington* (1983), 8 Ohio App.3d 314, 8 OBR 423, 457 N.E.2d 369.[5] When Fields and Adams committed

---

**3.** R.C. 2941.25 states:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**4.** Other examples in which the elements of allied offenses are analyzed within the facts of the crime include selling beer to minor/causing delinquency in child—allied, *Vazirani*, 48 Ohio St.3d at 83, 549 N.E.2d at 522; kidnapping/rape, kidnapping/robbery, kidnapping/felonious assault—sometimes allied, sometimes not allied, *State v. Logan* (1979), 60 Ohio St.2d 126, 132, 14 O.O.3d 373, 376-377, 397 N.E.2d 1345, 1349.

**5.** For examples of robbery and aggravated robbery (R.C. 2911.01[A][2], serious physical harm) as lesser included offenses, see *State v. Johnson* (Cuyahoga App.1988), 61 Ohio App.3d 693, 698, 573 N.E.2d 1110, 1114; *State v. Diaz* (Apr. 25, 1991), Cuyahoga App. No. 58664, unreported, 1991 WL 64321; *State v. Richardson* (Dec. 15, 1988), Cuyahoga App. No. 54778, unreported, 1988 WL 136032; *State v. Harris* (Jan. 21, 1988), Cuyahoga App. No. 53189, unreported, 1988 WL 5192; *State v. Taylor* (Oct. 29, 1987), Cuyahoga App. No. 52892, unreported, 1987 WL 19249; *State v. Dykes* (Dec. 17, 1993), Lake App. No. 92–L–078, unreported, 1993 WL 548456; *State v. Miles* (Mar. 12, 1991), Mahoning App. No. 90 C.A. 69, unreported, 1991 WL 33098; *State v. Jones* (Mar. 13, 1990), Franklin App. No. 89AP–424, unreported, 1990 WL 26126; *State v. Wiseman* (July 18, 1989), Franklin App. No. 88AP–1012, unreported, 1989 WL 83570.

the theft against Burger King, they shoved a metal box into Kilpatrick's ribs and closed her in the cooler. This crime, therefore, satisfied the elements of aggravated robbery, i.e., theft plus infliction or attempted infliction of serious physical harm. Under these facts, the commission of aggravated robbery also resulted in the commission of robbery, i.e., theft from Burger King and force against a Burger King employee. Therefore, the crimes of aggravated robbery and robbery are allied offenses, and analysis under the second step of *Vazirani* is necessary.[6]

In the second step, the defendant properly may be sentenced for two crimes if that person committed the crimes with a separate animus or separate conduct. *Vazirani*, 48 Ohio St.3d at 84, 549 N.E.2d at 523. It may be argued that the animus for the force (seizing the metal box) and the animus for serious physical harm (walk-in cooler) were different because the force was to deprive Burger King of property, but the harm was to effect escape.

The rule is, however, that the separate animus for each *crime*—not individual elements of each crime—must be different. *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817. For instance, when the restraint in kidnapping substantially increases the victim's risk of harm and is done to facilitate the commission of the robbery, the animus for the two crimes is separate. *State v. Logan* (1979), 60 Ohio St.2d 126, 135, 14 O.O.3d 373, 376, 397 N.E.2d 1345, 1349. By contrast, Fields and Adams were charged with and convicted of aggravated robbery and robbery crimes against Burger King. To complete the theft element of those two crimes, the state only proved one theft. Consequently, the Burger King aggravated robbery and robbery were done with the same animus, to deprive Burger King of the $1,200.

Regarding separate conduct, when two allied offenses are committed at separate times, at separate locations, or against different victims, the offender may be sentenced for two crimes. *State v. Campbell* (1983), 13 Ohio App.3d 338, 13 OBR 417, 469 N.E.2d 855 (times); *State v. Valvano* (Dec. 30, 1992), Hamilton App. Nos. C–920227, C–920228, unreported, 1992 WL 393196; *State v. Ragan* (Aug. 1, 1990), Hamilton App. No. C–890137, unreported, 1990 WL 107455 (locations); *State v. Jones* (1985), 18 Ohio St.3d 116, 18 OBR 148, 480 N.E.2d 408 (victims). When, however, the conduct is part of one continuous act, the crimes are not separate. *Vazirani*, 48 Ohio St.3d at 83–84, 549 N.E.2d at 522–523; *State v. Shirley* (May 26, 1993), Hamilton App. No. C–920535, unreported, 1993 WL

---

6. This is not the case where the defendant was charged with aggravated robbery with a deadly weapon (R.C. 2911.01[A][1]) and robbery with force (R.C. 2911.02). See, generally, *State v. Merriweather* (1980), 64 Ohio St.2d 57, 18 O.O.3d 259, 413 N.E.2d 790, syllabus; *State v. Asher* (Apr. 27, 1994), Hamilton App. No. C–930295, unreported, 1994 WL 156257.

321527. In this case, there was only one theft for the Burger King aggravated robbery and robbery. Therefore, the crimes were committed at the same time and location and were against the same victim; because there was only one Burger King theft, one crime was not complete before the other began. Therefore, the Burger King aggravated robbery and robbery were part of one continuous act, and the conduct of the crimes was not separate.

 The state correctly argues that the aggravated robbery of Burger King and the robbery of Kilpatrick were against two different victims. See, generally, *State v. Byrd* (1987), 32 Ohio St.3d 79, 84, 512 N.E.2d 611, 618. Those two crimes, however, had two complete sets of elements, specifically, (1) theft from Kilpatrick and force against Kilpatrick and (2) theft from Burger King and serious physical harm against a Burger King employee. Fields and Adams, therefore, properly were sentenced to consecutive sentences for those crimes. The Kilpatrick robbery, however, is irrelevant to show that they committed the aggravated robbery and the robbery of Burger King with separate conduct, and the sentence imposed for both Burger King robberies was error.

### 2. Was the Error Plain?

 For an error to be plain, at the very minimum, it must be clear under current law. *Olano,* 507 U.S. at ——, 113 S.Ct. at 1777, 123 L.Ed.2d at 519. Despite the complexity of the allied-offense analysis, Fields and Adams only committed one theft against Burger King. To be sentenced for aggravated robbery and robbery against Burger King from that one act was a violation of a specific statutory prohibition. Therefore, the error was plain.

### 3. Was the Error Prejudicial?

It can be argued that the net effect of the concurrent robbery sentences for Fields and Adams rendered their allied offenses nonprejudicial. The question here, then, is whether the sentence for the Burger King robbery, which ran concurrently with a robbery that properly ran consecutively to the Burger King aggravated robbery, was prejudicial within the meaning of Crim.R. 52(B).

 In Ohio, R.C. 2941.25 mandates that the court may not sentence a defendant for two allied offenses. This protection is rooted in the concept that multiple punishments for single crimes violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665; *State v. Thomas* (1980), 61 Ohio St.2d 254, 260, 15 O.O.3d 262, 265–266, 400 N.E.2d 897, 902. Even in the case of concurrent sentences for allied offenses, this court has held that it is prejudicial plain error to impose multiple sentences. *State v. Burl* (Dec. 16, 1992), Hamilton App. Nos. C–920167, 920194, unreported, 1992 WL 380020;

*State v. Brown* (Mar. 18, 1992), Hamilton App. No. C–900925, unreported, 1992 WL 52716; *State v. Gordon* (Mar. 18, 1992), Hamilton App. No. C–910375, unreported, 1992 WL 52723; *State v. Carter* (Dec. 19, 1990), Hamilton App. No. C–890787, unreported, 1990 WL 209676; *State v. Elyel* (Mar. 21, 1984), Hamilton App. No. C–830403, unreported, 1984 WL 14107. The prejudice is a "criminal record [that] will reveal convictions for two felonies" when the defendant has committed only one criminal act. *State v. Burl* (Dec. 16, 1992), Hamilton App. Nos. C–920167, C–920194, unreported, 1992 WL 380020.

Other appellate courts have reached the opposite conclusion regarding prejudice in concurrent sentences. *State v. Hendrix* (June 13, 1991), Cuyahoga App. Nos. 58519, 58520, unreported, 1991 WL 106038; *State v. Miller* (Dec. 5, 1990), Holmes App. No. CA–427, unreported, 1990 WL 200366. Notwithstanding these decisions, the trial court's error denied Fields and Adams a substantial right guaranteed by the United States Constitution, the Ohio Constitution, and the Ohio Revised Code. Had the error not occurred, the results clearly would have been otherwise, *i.e.*, the defendants would have been sentenced for only one of the crimes. Fields and Adams, therefore, suffered plain error.

Fields's fifth assignment of error and Adams's first assignment of error are sustained.

### B. Ineffective Assistance of Counsel

 Fields next contends that he received ineffective assistance of counsel because his trial attorney did not object to the sentences for allied offenses.[7] This assignment is moot under App.R. 12(A)(1)(c).

### C. Motion to Suppress

 Fields and Adams both argue that the court erred by failing to grant their motion to suppress.[8] They challenged the legality of the stop after the Burger King robbery and the subsequent search of the vehicle. As to the stop,

---

7. Fields's seventh assignment of error; Adams does not raise the ineffective-assistance claim.
 We note, parenthetically, that the failure to object to allied offenses is below the objective standard of reasonableness, and had the attorney objected, Fields and Adams should have been sentenced for only one Burger King crime. See, generally, *Lockhart v. Fretwell* (1993), 506 U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180, 191; *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373 (ineffective assistance); *State v. Miller* (Oct. 14, 1993), Meigs App. No. 92 CA 496, unreported, 1993 WL 415306; *State v. Stubblefield* (Feb. 13, 1991), Hamilton App. No. C–890597, unreported, 1991 WL 17219 (prejudice in ineffective assistance and plain error); *State v. Smith* (Dec. 10, 1992), Cuyahoga App. No. 61464, unreported, 1992 WL 369273 (failure to object).

8. Fields's first assignment; Adams's third assignment.

police knew from the broadcast that the physical descriptions matched the suspects, who had been detained in the vicinity of Burger King just prior to the robbery. Under these circumstances, that collective information possessed by the law enforcement community was sufficient to provide reasonable suspicion for the stop. *State v. Cook* (1992), 65 Ohio St.3d 516, 520–521, 605 N.E.2d 70, 78.

As to the next police intrusion, Fields and Adams challenge the officer's seizure of items found in the automobile. Those items were a white linen bag containing currency and coin from Burger King, a purse and prescription bottle belonging to Kilpatrick, a tan gun holster, and several locking-blade knives. The record contains evidence that all these items were in plain view in the front seat of the automobile when the officer made the initial lawful stop after the robbery. Furthermore, because the contraband matched the description of the items taken during the robberies, it was immediately apparent that the items were incriminating. Therefore, the officer did not violate the Fourth Amendment by seizing the items. See, generally, *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819, 833 (plain view); *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547 (standard of review for suppression rulings). These assignments of error are overruled.

## D. Sufficiency/Manifest Weight

Fields and Adams argue that there was no evidence of a serious, debilitating injury to Kilpatrick to satisfy proof of the serious-physical-harm element of aggravated robbery.[9] Contrary to this assertion, the crime of aggravated robbery does not require that the victim receive an actual injury. It merely requires proof that the defendant attempted to inflict serious physical harm. R.C. 2911.01(A)(2). Here, the record shows that the assailants hit Kilpatrick in the face, broke her tooth, and, later, barricaded her in a walk-in cooler.

Reasonable minds could find that these acts were attempts to inflict incapacity, disfigurement, or pain, or even give rise to a risk of death, within the meaning of aggravated robbery. See, generally, R.C. 2901.01(E). Therefore, the sufficiency argument fails under *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Neither does the record suggest that the jury lost its way when it determined that these acts constituted an attempt to inflict serious physical harm. See, generally, *State v. Abi–Sarkis* (1988), 41 Ohio App.3d 333, 337, 535 N.E.2d 745, 750; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720 (manifest weight); see, also, *State v.*

---

**9.** Fields's second and sixth assignment; Adams's second assignment.

*Crawford* (1983), 10 Ohio App.3d 207, 10 OBR 280, 461 N.E.2d 312 (reckless mental state for attempt to cause serious physical harm).

These assignments of error are overruled.

**E. Seizing Glasses**

Fields next argues that the trial court committed reversible error by allowing the state to seize his glasses at trial.[10] Fields was under arrest at the time of the trial. Therefore, the seizure was not unlawful. *State v. Akron Airport Post No. 8975* (1975), 19 Ohio St.3d 49, 51, 19 OBR 42, 43, 482 N.E.2d 606, 608. Fields argues, nonetheless, that the court also erred by allowing the prosecutor to enter the glasses into evidence because the glasses were an undisclosed exhibit. See, generally, Crim.R. 16(E)(3).

As a general rule, the court's decisions under Crim.R. 16 are reviewed under an abuse-of-discretion standard. *State v. Sowders* (1983), 4 Ohio St.3d 143, 145, 4 OBR 386, 388–389, 447 N.E.2d 118, 119–120. Specifically, when a party, in this case the prosecutor, fails to comply with Crim.R. 16, the court may make any "order as it deems just under the circumstances." Crim.R. 16(E)(3).

Here, Kilpatrick relied upon the glasses, because of their unusual thickness, to identify Fields. Fields was photographed wearing the glasses when he was arrested and he wore them at the hearing on the motion to suppress. At trial, however, he appeared without the glasses. The trial court noticed that he had papers in front of him that "he's reading almost up to his nose." Under these facts, therefore, the court did not abuse its discretion by allowing the glasses to be introduced into evidence. This assignment of error is overruled.

**F. Speedy Trial**

Fields finally contends that the trial court erred by not granting his motion to dismiss based on a violation of the ninety-day, three-for-one, speedy-trial provisions of R.C. 2945.71.[11] During the time between his arrest on October 2, 1992 and his June 29, 1993 trial, Fields was in custody on a parole holder. Therefore, the three-for-one provisions did not apply. The state was required to meet only the two-hundred-seventy-day limit. See, generally, *State v. Cook* (1992), 65 Ohio St.3d 516, 518, 605 N.E.2d 70, 76. Furthermore, Fields filed motions for continuances that delayed the time of trial more than one hundred days. He is accountable for those delays. R.C. 2945.72(H). Consequently,

---

10. Fields's third assignment.

11. Fields's fourth assignment.

Fields was tried within the speedy-trial limits of R.C. 2945.71, and the trial court properly denied the motion to dismiss. This assignment of error is overruled.

## III. CONCLUSION

The assignments of error related to allied offenses are sustained. The rest of Fields's and Adams's assignments of error are overruled. Under the authority of App.R. 12, we remand case Nos. C–930638 and C–930652 for the trial court to resentence Fields and Adams by omitting the sentences imposed on count two of the indictment, the Burger King robbery, as an allied offense of similar import to the Burger King aggravated robbery. In all other respects the judgments appealed from in case Nos. C–930638 and C–930652 are affirmed.

*Judgments affirmed in part,*
*reversed in part*
*and causes remanded.*

HILDEBRANDT, P.J., and DOAN, J., concur.