DECISION AND JUDGMENT ENTRY
This is an appeal from a Hocking County Common Pleas Court judgment of conviction and sentence. The jury found Hedi Bouchioua, defendant below and appellant herein, guilty of the following offenses: (1) aggravated burglary, in violation of R.C.2911.11 (A)(1); (2) aggravated robbery, in violation of R.C.2911.01 (A)(1); (3) felonious assault, in violation of R.C.2903.11; (4) theft of a weapon, in violation of R.C. 2913.02
(A)(1); (5) aggravated menacing, in violation of R.C. 2903.21
(A); and (6) theft of cash, in violation of R.C. 2913.02 (A)(1).
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING COUNTS OF AGGRAVATED ROBBERY AND FELONIOUS ASSAULT TO BE ALLIED OFFENSES OF SIMILAR IMPORT, YET ALLOWING CONVICTIONS ON BOTH COUNTS, IN VIOLATION OF MR. BOUCHIOUA'S DUE PROCESS RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ADMITTING A MISDEMEANOR CONVICTION, NOT INVOLVING FALSITY, OVER THE OBJECTION OF DEFENSE COUNSEL, IN VIOLATION OF MR. BOUCHIOUA'S DUE PROCESS RIGHTS AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ADMITTING THE ALLEGED VICTIM'S HANDWRITTEN STATEMENT AT THE CLOSE OF THE STATE'S CASE, OVER DEFENSE OBJECTION, WHEN THE DOCUMENT WAS NEVER AUTHENTICATED, COUNSEL NEVER SAW IT, AND IT ADDRESSED AN ESSENTIAL ELEMENT NOT OTHERWISE PROVEN BY THE STATE, IN VIOLATION OF THE RIGHT TO CONFRONTATION PROVIDED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
FOURTH ASSIGNMENT OF ERROR:
 "THE CONVICTIONS FOR AGGRAVATED BURGLARY AND THEFT OF CASH ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF MR. BOUCHIOUA'S RIGHT TO DUE PROCESS UNDER THE OHIO AND FEDERAL CONSTITUTIONAL LAW."
Our review of the record reveals the following facts pertinent to the instant appeal. In 1994, appellant and Edna Spencer, an elderly woman, met at the Fred Astaire Dance Studio. Appellant, a man in his late twenties to early thirties, was Spencer's new ballroom dance instructor.
At some point in 1996, Spencer and appellant discussed opening their own dance studio. Subsequently Spencer and appellant formed a corporation for the purpose of operating a Fred Astaire Dance Studio. The studio never opened, however. Instead, the business and personal relationships quickly soured. Spencer informed appellant that she intended to dissolve the corporation.
The tension between the parties reached it peak on February 20, 1998. Appellant, while in Spencer's home, beat her and caused her to suffer serious injury. After appellant left Spencer's home, Spencer noticed that one of her guns was missing. Additionally, appellant had taken money from Spencer's purse.
On March 2, 1998, the Hocking County Grand Jury returned an indictment charging appellant with: (1) aggravated burglary, in violation of R.C. 2911.11 (A)(1); (2) aggravated robbery, in violation of R.C. 2911.01 (A)(1); (3) felonious assault, in violation of R.C. 2903.11; (4) theft of a weapon, in violation of R.C. 2913.02 (A)(1); (5) theft of a credit card, in violation of R.C. 2913.02 (A)(1); (6) aggravated menacing, in violation of R.C. 2903.21 (A); and (7) theft of cash, in violation of R.C.2913.02 (A)(1).
During trial, the state presented evidence that on February 20, 1998, appellant broke into the Spencer's home, stole her gun, beat her, and stole money and a credit card.
Spencer, the state's first witness, testified that in 1994, she first became acquainted with appellant, a ballroom dance instructor. Spencer stated that she and appellant became friends, going out for coffee and dinners.
Spencer stated that appellant worked at the dance studio for some time, then left and traveled to Alabama, then South Carolina, to work at other dance studios. Although appellant had left the area, Spencer testified that she stayed in touch with him.
Spencer further testified that during the last part of 1996 or early 1997, she and appellant formed a business relationship as partners in ballroom dancing. The plan was to start a studio in Cleveland. Spencer supplied nearly all of the financing and appellant ran the day-to-day operations. Shortly after forming the corporation, Spencer decided to dissolve the corporation.
Spencer recalled that on February 20, 1998, sometime after 6 p.m., she had returned from running errands to discover appellant standing in the hallway of her home. She stated that she was afraid and had not expected him. She further stated that the house had been locked and that she did not know how appellant gained entry to her home.
Spencer testified that appellant asked her if she had anything to eat. She gave him food to eat. After appellant ate, he showered. Spencer stated that appellant then rested on the couch and she thought he was sleeping. Meanwhile, she went downstairs to make sure the door was locked. Unbeknownst to her, appellant apparently had followed her downstairs, then hit her in the head with a blunt object. She started to ask him what he was doing and he hit her again. Spencer then either passed out or was knocked unconscious. She stated that appellant helped her upstairs and got her a cold cloth.
Spencer testified that the next day, appellant asked her to get her Subaru for him. When she went to get the car, she could not find her keys. She then found appellant sitting in her Cadillac. She stated that the Cadillac had been locked. She asked appellant if he had been in her purse and he stated that he had. He told her that he took some money and a credit card. Spencer testified that she did not give him permission to take anything out of her purse. Spencer told appellant that she wanted him to return her credit card. Appellant returned the credit card and she threw the car keys at him.
Between two and three o'clock in the afternoon, appellant left for the Cleveland area. After appellant left, Spencer could not find one of her guns.
Spencer stated that once appellant left, she returned inside her house to rest for awhile. When she finished resting, she called her son who lived nearby. She already had called the State Highway Patrol to report her car missing. Her son came to her house and discovered that a window in the guest room was broken. There was also mud inside the room. Later, the victim discovered that her nose had been broken.
Spencer denied having sent appellant money to travel from Cleveland to her home. She stated that at one point, she had given appellant a key to her house and that she could not recall whether he had returned the key.
Hocking County Sheriff's Deputy Ryan Gabriel testified that he helped investigate Spencer's complaint. He noticed a window in the guest room had been opened and that it appeared as if someone climbed up the side of the house to gain entry through the guest room window. Gabriel noticed scratch marks, mud, and grass stains by the window, and that the window screen had been ripped off and mud was inside the room.
Richard Spencer, the victim's son, testified that when he went to his mother's home shortly after the incident, he noted that the gun her had given to his mother was missing. When presented with the gun discovered in the car that appellant had been driving when arrested, Spencer identified the gun as the one he had given to his mother.
Appellant testified that he had been an instructor at Fred Astaire from September of 1994 to May of 1995. After May of 1995, appellant stated that he left area and went to teach at other Fred Astaire studios around the county. He testified that Spencer stayed in contact with him and eventually asked him if he would like to join her in opening their own Fred Astaire studio. Appellant agreed and flew to Ohio in August of 1996.
After discussions, appellant and Spencer agreed to open a studio in the Cleveland area. Appellant stated that while he looked for a location to open the studio, he needed a place to live in the Cleveland area. He testified that Spencer told him that the company would pay for his living expenses.
Appellant further testified that he and Spencer opened a corporate checking account in the Cleveland area. Appellant stated that two weeks later, he received a phone call stating that fifteen checks had bounced. Appellant also stated that he had an American Express corporate card that he used for gas and food. He testified that without warning, the credit card was canceled. Appellant further stated that although he and Spencer formed a corporation and bought the franchise, the studio never opened.
When questioned about his relationship with Spencer as of February of 1998, appellant stated: "[B]asically she owned me. As far as reputation she ruined me. * * * I didn't have a car to [get] around. She made sure the lease[d] car was gone * * *."
Appellant's version of the events surrounding the evening of February 20, 1998 and into the next day differed from Spencer's story. Appellant, while not denying that he had hit Spencer, testified that Spencer had invited him into her home. Appellant testified that Spencer wired him money so that he could take a bus from Cleveland to Columbus and then a cab to Logan. Appellant claimed that Spencer told him to come late at night so that her son would not see him. Appellant stated that the last time he saw Spencer, her son had told appellant not to come to his mother's home again.
Appellant testified that between 8:00 and 9:00 p.m., he arrived at Spencer's home and rang the doorbell. Appellant stated that Spencer let him inside, pulled out two microwave dinners, and fixed appellant a drink. Appellant stated that he then took a shower.
Appellant testified that he noticed a gun underneath the guest room bed. Appellant stated that the gun frightened him because Spencer previously had waved the gun at him. Appellant stated that he took the gun, went downstairs to the basement, and put the gun in the basement underneath a tire.
Appellant stated that he and Spencer watched movies until about 3:00 a.m. Spencer then informed appellant that she was going downstairs to lock up. Appellant went with her and noticed a folder that contained his name sitting by Spencer's files. Appellant looked at the file. Appellant testified that the file contained his personal history and contained a letter from Spencer's attorney regarding the dissolution of the business and a note about repossession of appellant's leased car.
Appellant stated that he could not remember what happened next. He stated: "We had so many drinks, I had no idea. All I remember is she is in the bathtub and she is bleeding." He testified that he supposed he had punched her. Appellant stated that he helped Spencer upstairs, put her in bed, and cleaned the blood off of her. Appellant claimed that he eventually fell asleep.
Appellant testified that he woke up around 2:30 p.m. the next day. He stated that he had to go to Cleveland to pick up his clothes and that Spencer was going to loan him her Subaru. He stated that when Spencer could not locate the keys to her Subaru, she gave him the keys to her Cadillac.
Appellant stated that Spencer's purse was in the Cadillac. Appellant claimed that Spencer took her purse out of the Cadillac. Appellant testified that he asked her if he could have some money and that Spencer gave him some money. Appellant stated that the gun had been underneath the Cadillac and that he put it in the Cadillac's trunk.
Appellant also presented testimony from other witnesses who testified that they did not know him to be a violent person.
On May 8, 1998, the jury found appellant guilty of all offenses as charged in the indictment, except the theft of a credit card offense.
On June 30, 1998, appellant argued that all the offenses of which the jury found him guilty constituted allied offenses of similar import.
Prior to sentencing appellant, the trial court determined that the aggravated robbery offense and the felonious assault offenses constituted allied offenses of similar import and that the offenses were committed with the same animus.
On July 2, 1998, the trial court sentenced appellant to a definite term of sixteen years. Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant asserts that the trial court erred by imposing concurrent sentences for the aggravated robbery and the felonious assault offenses when the trial court specifically determined that the two offenses constituted allied offenses of similar import. Additionally, appellant argues that the trial court should have found the aggravated robbery and the theft offenses to constitute allied offenses of similar import.
The multiple count statute, R.C. 2941.25,[2] governs our analysis. R.C. 2941.25 (B) permits a trial court to impose cumulative punishment upon an offender who is convicted of multiple offenses of dissimilar import. See R.C. 2941.25 (B);State v. Rance (1999), 85 Ohio St.3d 632, 636, 710 N.E.2d 699,703; State v. Blankenship (1988), 38 Ohio St.3d 116, 117,526 N.E.2d 816, 817. A defendant also may be subject to cumulative punishment for allied offenses of similar import, but only if: (1) the allied offenses are committed separately; or (2) the allied offenses are committed with a separate animus. See R.C.2941.25 (B); Rance, 85 Ohio St.3d at 636, 710 N.E.2d at 703;State v. Jones (1997), 78 Ohio St.3d 12, 13-14, 676 N.E.2d 80,81. When the defendant is charged with allied offenses of similar import and when the offenses are not committed separately or with the same animus, "the defendant may be convicted (i.e., found guilty and punished) of only one." Rance, 85 Ohio St.3d at 636,710 N.E.2d at 703; see, also, R.C. 2941.25 (A).
Multiple offenses constitute allied offenses of similar import when the elements of the crimes, in the abstract,[3] "`"correspond to such a degree that the commission of one crime will result in the commission of the other."'" Rance, 85 Ohio St.3d at 636,710 N.E.2d at 703 (quoting Jones, at 13, 676 N.E.2d at 81 (quotingBlankenship, 38 Ohio St.3d at 117, 526 N.E.2d at 817)). In conducting the inquiry, "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" Id., 85 Ohio St.3d at 638, 710 N.E.2d at 705 (quotingJones, 78 Ohio St.3d at 14, 676 N.E.2d at 81). "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id.
In the case at bar, the trial court concluded that aggravated robbery[4] and felonious assault[5] constituted allied offenses of similar import. We will not review the propriety of the trial court's decision.[6]
While the court concluded that the aggravated robbery and felonious assault offenses constituted allied offense of similar import and that the two offenses were "tied together by the same animus," the court nonetheless proceeded to sentence appellant to concurrent terms of imprisonment for the offenses. In sentencing appellant, the court stated:
 "In regard to the aggravated robbery, I sentence you to eight years * * * In regard to the felonious assault[,] I sentence you to six years * * * Those are concurrent sentences as I determined they are allied offenses of similar import."
R.C. 2941.25 prohibits a trial court from imposing cumulative punishments for offenses that the court decides constitute allied offenses of similar import committed with the same animus. In the case at bar, the trial court, by imposing concurrent sentences for allied offenses of similar import, subjected appellant to multiple punishments. See State v. Fields (1994), 97 Ohio App.3d 337,347-48, 646 N.E.2d 866, 873 (stating that imposing concurrent sentences for allied offenses of similar import constitutes multiple punishments prohibited by R.C. 2941.25); State v. Thompson (July 23, 1999), Washington App. No. 98 CA 10, unreported. The provisions of R.C. 2941.25 (A) permit appellant to be indicted, tried and found guilty for both of these offenses. However, appellant can only be convicted or sentenced for one of the offenses. Accordingly, we sustain the portion of appellant's first assignment of error regarding the sentence imposed for the aggravated robbery and felonious assault offenses.
We now turn our attention to appellant's second argument raised in his first assignment of error: whether the aggravated robbery and theft offenses constitute allied offenses of similar import for which only one "conviction" may stand.
We initially note that appellant failed to raise the issue during the trial court proceedings.[7] Appellant, however, asserts that the trial court committed plain error. We may reverse appellant's conviction only if the complained of error affects one of appellant's substantial rights. Crim.R. 52 (B); State v.Slagle (1992), 65 Ohio St.3d 597, 603, 605 N.E.2d 916, 924-25;State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. An alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus; see, also, State v. Stojetz (1999), 84 Ohio St.3d 452,455, 705 N.E.2d 329, 335. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52 (B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum
(1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717.
To find plain error, a court must find that: (1) error exists; (2) the error is plain; and (3) the error prejudiced the defendant. State v. Fields (1994), 97 Ohio App.3d 337, 344,646 N.E.2d 866, 871 (citing United States v. Olano (1992),507 U.S. 725, 732-34, 113 S.Ct. 1770, 1777-78, 123 L.Ed.2d 508) Prejudice exists if the error "created a manifest injustice or seriously affected the `fairness, integrity or public reputation of [the] judicial proceedings.'" Fields, 97 Ohio App.3d at 344,646 N.E.2d at 871 (quoting Olano, 507 U.S. at 736, 113 S.Ct. at 1779,123 L.Ed.2d 508). We conduct our review accordingly.
Examining the elements of the aggravated robbery statute, R.C.2911.01 (A)(1), and the theft statute, R.C. 2913.02 (A)(1), in the abstract, we conclude that the commission of aggravated robbery automatically results in the commission of a theft offense. See Rance supra. R.C. 2911.01 (A)(1), the aggravated robbery statute provides:
 No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *.
R.C. 2913.02 (A)(1), the theft statute provides:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent * * *.
The clear language of the aggravated robbery statute reveals that one cannot commit aggravated robbery without also committing a theft offense. See State v. Parson (1983), 6 Ohio St.3d 442,453 N.E.2d 689; State v. Johnson (1983), 6 Ohio St.3d 420,453 N.E.2d 595 (both stating that theft and aggravated robbery are allied offenses of similar import). Consequently, R.C. 2941.25 prohibits cumulative punishment for the offenses unless the defendant committed the offenses separately or with a separate animus.
Having determined that theft and aggravated robbery are allied offenses of similar import, we now must resolve whether the trial court properly "convicted" (i.e., found guilty and sentenced) appellant of the two counts of theft, theft of cash and theft of a weapon, and aggravated robbery. In deciding the foregoing question, we must consider whether the offenses were committed separately or with a separate animus. See R.C. 2941.25 (B).
From our review of the record, the underlying theft offense for the aggravated robbery conviction occurred when appellant deprived the victim of the weapon.[8] When appellant took the weapon, thus committing the offense of theft of a weapon, he necessarily had a weapon on or about his person or under his control. Moreover, the record contains some evidence that at the time appellant committed the offense of theft of a weapon, he brandished, displayed, indicated that he possessed, or used the weapon. The victim testified that appellant hit her with a blunt object and her statement indicates her belief that appellant struck her with a weapon. Thus, it appears that the aggravated robbery offense and the theft of a weapon offense were not committed separately, but were committed at the same time. Consequently, we conclude that the aggravated robbery offense and the theft of a weapon offense constitute allied offenses of similar import for which multiple punishments may not be imposed.[9]
We do not believe, however, that R.C. 2941.25 prohibits multiple punishments for the theft of cash offense and the aggravated robbery offense. When the theft of cash offense occurred, the aggravated robbery offense had already occurred. No allegation appears in the record that appellant had a weapon on or about his control at the time he deprived the victim of her cash. Consequently, we conclude that the aggravated robbery offense and the theft of cash offense occurred separately. Thus, the trial court properly convicted appellant for both the aggravated robbery and the theft of cash offense.[10] We find, therefore, that the trial court erred by entering a conviction on the aggravated robbery and a conviction on the theft of a weapon offenses.
We also find that the error constitutes plain error. Other Ohio appellate courts have noticed plain error when a trial court fails to recognize offenses as allied offenses of similar import for which multiple punishment is prohibited. See, e.g., State v.Mergy (1995), 105 Ohio App.3d 646, 664 N.E.2d 1009; State v. Lang
(1995), 102 Ohio App.3d 243, 656 N.E.2d 1358; State v. Fields
(1994), 97 Ohio App.3d 337, 646 N.E.2d 866; State v. Easley (June 13, 1995), Franklin App. No. 95 APA01-1, unreported.
Furthermore, the plain error affects one of appellant's substantial rights. The trial court's sentencing entry reflects that appellant was convicted of one or more offenses constituting allied offenses of similar import. The trial court sentenced appellant to concurrent terms of imprisonment for the theft of a weapon offense and the aggravated robbery offense. As stated above, when a court sentences an offender to concurrent terms of imprisonment for allied offenses of similar import, prejudicial error occurs. See Fields, supra; Thompson, supra. But, see, e.g.,Blondheim, supra; State v. Styles (Oct. 9, 1997) Cuyahoga App. No. 71052, unreported; Combs, supra (all concluding that imposing concurrent sentences for allied offenses of similar import does not constitute plain error requiring reversal and remand)
Accordingly, we sustain the portion of appellant's first assignment of error challenging the trial court's convictions for aggravated robbery and theft of a weapon and for aggravated robbery and felonious assault. We overrule the portion of appellant's first assignment of error challenging the trial court's conviction for aggravated robbery and theft of cash.
 II
In his second assignment of error, appellant argues that the trial court erred by admitting evidence of appellant's prior misdemeanor domestic violence conviction. Appellant claims that Evid.R. 609 (A) prohibited the introduction of his prior conviction. We disagree with appellant.
Initially, we note that the admissibility of evidence is left to the sound discretion of the trial court. Accordingly, absent an abuse of discretion, a reviewing court must not reverse the trial court's decision. State v. Combs (1991), 62 Ohio St.3d 278,581 N.E.2d 1071; State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343; State v. Rooker (Apr. 15, 1993), Pike App. No. 483, unreported. An abuse of discretion implies more than an error of law or of judgment. Rather, an abuse of discretion implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. State v. Xie (1992), 62 Ohio St.3d 521,584 N.E.2d 715; State v. Montgomery (1991), 61 Ohio St.3d 410,575 N.E.2d 167. Moreover, when applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 566 N.E.2d 1181 (citing Berk v. Matthews (1990),53 Ohio St.3d 161, 359 N.E.2d 1301)
We disagree with appellant that Evid.R. 609 (A) prohibited the state from inquiring, on cross-examination, about appellant's prior misdemeanor domestic violence conviction. We believe that Evid.R. 404 (A)(1) permitted the state to rebut appellant's evidence that he is a non-violent person by questioning appellant, on cross-examination, about his prior conviction.
While the Rules of Evidence generally prohibit the use of character evidence to show that an accused has the propensity to commit the crime with which he stands charged, see State v.Thompson (1981), 66 Ohio St.2d 496, 497, 422 N.E.2d 855, 856;Curry, 43 Ohio St.2d at 68, 330 N.E.2d at 723, it is well-established that once an accused puts evidence of his good moral character or his non-violent character in issue, the prosecution may offer evidence to rebut the accused's "good" character evidence. See Evid.R. 404 (A)(1); see, generally, Statev. Finnerty (1989), 45 Ohio St.3d 104, 108, 543 N.E.2d 1233, 1237;State v. Rahman (1986), 23 Ohio St.3d 146, 153, 492 N.E.2d 401,408-09.
Evid.R. 404 (A)(1) provides:
 Evidence of a pertinent trait of [the accused's] character offered by an accused, or by the prosecution to rebut the same is admissible; however in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
Thus, Evid.R. 404 (A)(1) permits a criminal defendant to choose to "offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character." Gianelli and Snyder, Evidence (1996), 229. "If the accused offers evidence of his good character," however, "the prosecution [may] offer evidence of the bad character of the accused." Id.
Thus, in the case at bar, because appellant, by producing witnesses to testify as to his non-violent, peaceable character, put his character in issue, and pursuant to Evid.R. 404 (A), the state was entitled to rebut such evidence.
Moreover, we note that other courts have rejected the argument that Evid.R. 609 (A) prohibits rebuttal evidence of an accused's character. See, generally, State v. Hewitt (1985), 26 Ohio App.3d 72,498 N.E.2d 215 (stating that no error occurred when the trial court permitted the state to offer evidence of the defendant's prior convictions for purposes of attacking his credibility during the state's rebuttal as opposed to on cross-examination). For example, in State v. King (Aug. 30, 1995), Summit App. No. 16921, unreported, the defendant argued that his prior domestic violence conviction was improperly admitted as impeachment evidence because it did not satisfy the requirements of Evid.R. 609 (A). The court of appeals found the defendant's argument misplaced, noting that the evidence was admissible pursuant to Evid.R. 404 (A)(1). The court noted that when the defendant testified, he stated that he did not intend to kill the victim and that he had never hurt her. The defendant also presented six witnesses who testified as to his peaceful character. The court further noted that before the defense commenced it case, the defendant's character had not been an issue. Thus, the court concluded that the defendant "squarely" put his character in issue, thus opening the door to rebuttal evidence.
The court further concluded that the state questioned the defendant about his prior domestic abuse convictions "as specific instances of past conduct to rebut his claims of peacefulness." The court reasoned that the state had not offered the evidence for impeachment, but for rebuttal.
We believe that the case at bar closely resembles the situation presented in King. During the state's case-in-chief, no evidence concerning appellant's character trait for peacefulness or violence had been presented. Only after the state had rested and the defense case commenced did character become an issue. Appellant, by producing witnesses to testify as to his non-violent character, opened the door to rebuttal evidence. The state did not offer evidence of appellant's prior domestic violence conviction as improper impeachment evidence prohibited pursuant to Evid.R. 609 (A), but as evidence to rebut appellant's evidence of his peaceful character permissible under Evid.R. 404 (A)(1).
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III
In his third assignment of error, appellant asserts that the trial court erred by admitting the victim's handwritten statement. Appellant argues: (1) that the state failed to authenticate the evidence; (2) that the state had not disclosed the evidence prior to trial; and (3) that admission of the evidence violated his constitutional right of confrontation. Appellee argues that appellant, by stipulating at trial to the statement's introduction, cannot complain of error.
We agree with the state that appellant, by stipulating to the document's admission, may not complain of alleged error in the admission of the evidence. In State v. Peagler (1996), 76 Ohio St.3d 496,500, 668 N.E.2d 489, 493, the court explained:
 "A party cannot be permitted to take advantage of an error that he himself invited or induced. State v. Wilson (1996), 74 Ohio St.3d 381, 396, 398, 659 N.E.2d 292, 307, 309; State v. Hill (1995), 73 Ohio St.3d 433, 444, 653 N.E.2d 271, 281; State v. Seiber (1990), 56 Ohio St.3d 4, 17, 564 N.E.2d 408, 422. If a party cannot rely upon a stipulation, then such stipulations should not be permitted. In the case sub judice, the parties stipulated to the facts, and appellee narrowed the issues to the specific situs of the search and the opening of the vial. Appellee cannot then complain of an error he himself induced by stipulation in the trial court."
Thus, any error that may have occurred constituted invited error. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make. State ex rel. Fuqua v. Alexander (1997),79 Ohio St.3d 206, 208, 680 N.E.2d 985, 987." State ex rel. The VCompanies v. Marshall (1998), 81 Ohio St.3d 467, 471,692 N.E.2d 198, 202.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV
In his fourth assignment of error, appellant contends that his convictions for the aggravated burglary and the theft of cash offenses are against the manifest weight of the evidence. With respect to the aggravated burglary offense, appellant asserts that the weight of the evidence fails to demonstrate that he trespassed in the victim's home. Appellant notes that the victim testified that she did not know how appellant entered her home. Moreover, appellant argues that the victim's hospitality, by affording appellant food, shower, and lodging, somehow negated any criminal intent. With respect to the theft of cash offense, appellant claims that the weight of the evidence demonstrates that the victim permitted appellant to take the cash.
When considering a claim that the trial court's judgment is against the manifest weight of the evidence, the reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree
with the fact finder's resolution of the conflicting testimony."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546-47 (quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 2218, 72 L.Ed.2d 652). The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356, 1357; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court has finished its examination, the court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387, 678 N.E.2d at 547 (quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-21). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132, syllabus.
Upon our review of the entire record, we find that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice. We find substantial, competent, credible evidence upon which to uphold appellant's convictions.
R.C. 2911.11 (A)(1) sets forth the offense of aggravated burglary. The statute provides:
 No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * *
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another * * *.
The offense occurs when the defendant enters the premises with the intent to commit a crime. Whether the defendant actually commits the intended felony is irrelevant. See, generally, Statev. Frazier (1979), 58 Ohio St.2d 253, 389 N.E.2d 1118. Moreover, a reasonable inference exists that one who forcibly enters an occupied structure does so with an intent to commit a theft offense. See State v. Flowers (1984), 16 Ohio App.3d 313,475 N.E.2d 790.
We note that, the elements of an offense may be established by direct evidence, circumstantial evidence, or both. See State v.Durr (1991), 58 Ohio St.3d 19, 514 N.E.2d 394. [58 Ohio St.3d 86, 568 N.E.2d 674] Circumstantial and direct evidence are of equal evidentiary value. See State v.Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, 502
("Circumstantial evidence and direct evidence inherently possess the same probative value [and] [i]n some instances certain facts can only be established by circumstantial evidence.")
In the case at bar, appellant primarily disputes the trespass element of the offense. The state relied upon circumstantial evidence to illustrate that appellant trespassed in the victim's home. Evidence was presented that a screen had fallen from the guest bedroom window and that mud was tracked into the guest bedroom. Additionally, the victim testified that she did not permit appellant's entry into her home. We believe that the foregoing evidence, if believed, presented the jury with substantial, credible evidence from which to conclude that appellant trespassed in the victim's home and, thus, that appellant committed the offense of aggravated burglary.
We further note that the jury obviously disbelieved appellant's testimony that the victim invited him into her home. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277,280.
Appellant argues, however, that a trespass cannot occur, within the meaning of the aggravated burglary statute, when the victim affords the defendant his or her hospitality. We disagree with appellant.
In State v. Steffen (1987), 31 Ohio St.3d 111, 509 N.E.2d 383, the Ohio Supreme Court rejected a similar argument. In Steffen, the victim permitted the defendant, a door-to-door salesman, to enter her home. Some time after he was in the victim's home, the defendant raped and killed the victim. The supreme court rejected the defendant's argument that he had not "trespassed" within the meaning of the burglary statute. The court reasoned that any consent granted to the defendant to enter the victim's home terminated when the defendant commenced his assault upon the victim.
Similarly, in the case at bar, we believe that any privilege appellant may arguably have had to enter or to remain in the victim's home terminated once he began assaulting her. Consequently, we do not believe that appellant's aggravated burglary conviction is against the manifest weight of the evidence.
Furthermore, we find substantial, credible evidence to support appellant's theft of cash conviction. R.C. 2913.02 (A)(1) sets forth the elements constituting a theft offense and provides as follows:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * *
(1) Without the consent of the owner * * *
The state's evidence, if believed, demonstrates that: (1) appellant took money out of the victim's purse; (2) appellant kept the money; and (3) appellant withdrew the money from the victim's purse without her consent. The foregoing facts presented the jury with substantial, credible evidence from which to conclude that appellant committed the theft of cash offense.
We disagree with appellant that the victim's failure to request appellant to return the cash once she discovered he had deprived her of the money somehow negates the offense. Rather, we believe that appellant committed the theft offense at the moment he first withdrew the money from the victim's purse without her consent. We find it immaterial that the victim did not ask appellant to return the money.
We further note that when questioned why the she did not request appellant to return the money, the victim responded that she "wasn't about to get into a fight with him and get beat up again." The victim stated that she "was afraid" to ask him to return her money.
Therefore, based upon the foregoing reasons, we overrule appellant's fourth assignment of error. Accordingly, we affirm the trial court's judgment in part, and reverse and remand the judgment in part. The purpose of the remand of this cause is to permit the trial court to resentence appellant in accordance within our disposition of appellant's first assignment of error.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FORFURTHER PROCEEDINGS.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Appellee and appellant shall equally divide the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Opinion as to Assignment of Error II, III IV; Concurs in Judgment Only as to Assignment of Error I.
Evans, J. : Concurs in Judgment Opinion as to Assignment of Error II IV; Concurs in Judgment Only as to Assignment of Error I III.
For the Court
 ____________________ Peter B. Abele Judge
[2] The statute provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
[3] In Rance, the Ohio Supreme Court resolved the conflict among the courts of appeals regarding whether courts examine the elements of the offense in light of the particular facts of the case or "in the abstract." The Rance court concluded that the elements should be compared "in the abstract." See Rance, at paragraph one of the syllabus ("Under an R.C. 2941.25 analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract.").
[4] R.C. 2911.01 (A)(1), the aggravated robbery statute provides:
 No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *.
[5] The felonious assault statute, R.C. 2903.11 (A)(1), provides as follows: "No person shall knowingly: (1) Cause serious physical harm to another or to another's unborn * * *.
[6] Although the state requests us to review the trial court's conclusion that the offenses constitute allied offenses of similar import, see State v. Preston (1986), 23 Ohio St.3d 64,491 N.E.2d 685, we decline to do so. Had the state wished to challenge the trial court's decision, the state should have filed a cross-appeal. See App.R. 3 (C)(1) (stating that "[a] person who * * * seeks to change the judgment * * * shall file a notice of cross-appeal * * *").
[7] We note that trial counsel, prior to sentencing, arguably raised the argument that the theft offenses and the aggravated robbery offense constitute allied offenses of similar import. Trial counsel argued that all of the offenses of which the jury found him guilty constitute allied offenses. On appeal, appellant raises this issue under the plain error standard. Because we question whether trial counsel raised the issue with the requisite level of specificity to preserve the issue for appeal, we proceed under a plain error analysis.
[8] Neither the state nor appellant clarifies the argument concerning the aggravated robbery offense and the "theft offenses" constituting allied offenses of similar import. Instead, both parties simply lump the theft offenses together.
[9] We note that the trial court's sentencing entry may, in fact, recognize that one theft offense constitutes an allied offense of similar import. Because we are unsure about the specific language used in the court's entry and because appellee disputes appellant's assignment of error and asserts that the trial court properly determined that the aggravated robbery offense and the theft offenses do not constitute allied offenses, we have chosen to address this issue in some detail. Additionally, with respect to the other theft offense, it appears that the trial court's sentencing entry correctly states that the jail time for that particular offense should be served concurrently with the felony offense.
[10] We again note that the trial court apparently determined that the jail sentence for the misdemeanor offense should be served concurrently with the felony sentence. See R.C. 2929.41.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.