JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Robert Barnett appeals his conviction for complicity to felonious assault. We find no merit to the appeal and affirm.[1]
 {¶ 2} Barnett was arrested on December 8, 2000, and was released on bond the same day. On January 23, 2001, he was bound over to the common pleas court and indicted on two counts — felonious assault and attempted murder. Both counts contained firearm specifications.
 {¶ 3} On January 4, 2002, prior to the commencement of trial, defense counsel moved for a dismissal of the indictments based on the alleged violation of Barnett's right to a speedy trial. After hearing the arguments on both sides and reviewing the file, the trial court found that the trial date fell within the allowable time because of the various speedy trial waivers signed by Barnett and the various continuances requested by his counsel.
 {¶ 4} Barnett executed a written jury waiver, and the following evidence was presented during his bench trial:
 {¶ 5} Catherine Smith testified that she is Sherman Crenshaw's neighbor in a duplex they shared. At 3:00 a.m. on November 26, 2000, she was sitting in the driveway in her car with a friend when a large black pick-up truck pulled up and blocked the driveway. Thinking it was Crenshaw, she leaned out the window and told him to move the truck so she could get out. At that point, she recognized Barnett as the driver of the truck. He asked her where Crenshaw was and when she did not respond, he made a motion indicating he had a gun and told her to tell Crenshaw that he was going to "cap a bitch." Smith understood this to mean he was going to shoot Crenshaw.
 {¶ 6} Rodney Richmond testified that on November 26 at approximately 2:00 p.m. he and several friends were gathered at his house to play a neighborhood football game. He saw Barnett pull up in a blue Cutlass and exit the car, and he heard Crenshaw yell at Barnett and ask him why he was looking for him the previous night. Barnett referenced a prior altercation he had with Crenshaw. As Crenshaw started to approach Barnett, Richmond testified that Barnett flashed a gun in his waistband, beneath his coat. Crenshaw continued to walk toward Barnett and, at that point, Charles Jackson exited the passenger side of the Cutlass and began shooting at Crenshaw. Crenshaw was shot and fell to the ground but got up and ran toward the house. According to Richmond, Barnett then joined Jackson in shooting at Crenshaw. Crenshaw made it into the house and Richmond locked the door. He observed that Crenshaw had been shot in the back.
 {¶ 7} Terrence Williams and Sidney Garth were also at Richmond's house and testified to basically the same facts to which Richmond testified. Garth added that several weeks prior to the incident, a man named Terrell had beaten and robbed Barnett. Crenshaw was with Terrell at the time. Garth also testified that he did not see Barnett shoot at Crenshaw, although he did see a gun in Barnett's waistband.
 {¶ 8} Sherman Crenshaw testified to the same events, but added that Barnett attempted to bribe him prior to trial so he would not testify. He stated he was shot once in the chest and once in the back and spent approximately two and one-half weeks in the hospital.
 {¶ 9} Officer Chipgus testified that he retrieved three gun shells at the scene, which all originated from the same weapon. When he questioned Richmond, Garth, and Williams at the scene, they told him that only Jackson had fired the shots.
 {¶ 10} Barnett testified that on the morning of the shooting, he met Charles Jackson at Charlie's Diner, which is the bar that Barnett's father owns and Barnett manages. Barnett told Jackson he was going to talk to Crenshaw, and Jackson agreed to accompany him. According to Barnett, it was not until they were in Jackson's car that he told him about the prior incident in which he was beaten and robbed by Crenshaw's friend, Terrell. Barnett contended he heard Crenshaw say, "there's about to be a massacre" prior to the assault and robbery.
 {¶ 11} Barnett drove Jackson's car to Richmond's house where the shooting occurred. He claimed he did not have a weapon on him and that he did not know that Jackson had a gun. According to Barnett, he was just going to talk with Crenshaw, not shoot him, and was shocked when Jackson started shooting. He stated that after the shooting, he quickly drove Jackson's car back to the bar. When he exited the car, Jackson sped away and Barnett has not seen him since.
 {¶ 12} After the incident, Barnett contacted his father and the next day called his attorneys and then turned himself in. According to Barnett, after Crenshaw got out of the hospital, he approached Barnett asking for a pay-off in exchange for not testifying.
 {¶ 13} Thomas Maloney, a private investigator hired by Barnett, testified that he spoke to Garth who told him that Jackson was the one who shot Crenshaw and that Barnett looked surprised when Jackson started shooting.
 {¶ 14} Santana Doss testified that Crenshaw admitted to him that Barnett did not shoot him but he was going to try and extort money from Barnett.
 {¶ 15} The trial court found Barnett guilty of aiding and abetting the felonious assault with a firearm but not guilty of attempted murder. The court sentenced him to two years incarceration, to run consecutively with the three-year sentence on the gun specification.
 {¶ 16} Barnett raises four assignments of error on appeal.
 Speedy Trial {¶ 17} In his first assignment of error, Barnett argues that the trial court erred by denying his motion to dismiss the indictments and he alleges a violation of his right to a speedy trial pursuant to R.C.2945.71.
 {¶ 18} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within two hundred seventy days after his arrest. Furthermore, R.C. 2945.73(B) provides, in pertinent part, that "a person charged with an offense shall be discharged if not brought to trial within the time required by sections 2945.71 and2945.72 of the Revised Code." Pursuant to State v. Pachay (1980),64 Ohio St.2d 218, the speedy trial statute must be strictly construed in favor of the accused. State v. Collura (1991), 72 Ohio App.3d 364, 367.
 {¶ 19} For purposes of computing time, R.C. 2945.71(E) states that each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. In other words, "a felony defendant in Ohio must be tried within ninety days if incarcerated on the pending charge or within two hundred seventy days if on bail." State v.Coleman (1989), 45 Ohio St.3d 298, 304. In the instant case, Barnett posted bail and was released the same date he was arrested — December 8, 2000. Therefore, Barnett's trial had to commence within 270 days in order to preserve his right to a speedy trial.
 {¶ 20} For purposes of computing the time for speedy trial, the date of the arrest is not counted. State v. Stamps (1998),127 Ohio App.3d 219, 223. Therefore, December 9, 2000 was the date on which Barnett's right to a speedy trial commenced.
 {¶ 21} A review of the record indicates that various continuances were made at the request of defense counsel as reflected in the journal entries. Pursuant to R.C. 2945.72(H), continuances granted at defendant's request toll the speedy trial time. State v. Fields (1994),97 Ohio App.3d 337, 350, 646 N.E.2d 866; State v. Barker, supra at 530;State v. Howard (1992), 79 Ohio App.3d 705, 708; State v. Collura
(1991), 72 Ohio App.3d 364, 369. Barnett denies that defense counsel requested any continuances, in spite of the court's journal entries stating otherwise. This court in Cleveland v. Kittrell, Cuyahoga App. No. 80954, 2002-Ohio-5456, recently held in addressing a similar issue:
 {¶ 22} "At the trial court, the defendant did not dispute that the journal entries stated that he had requested continuances which would operate to toll the speedy trial period. Rather, he argued that journal entries do not always accurately reflect at whose request a continuance was granted. The defendant argued that the court regularly enters `at defendant's request' even when a continuance should not be charged to the defendant. It is axiomatic that a court of record speaks only through its journal entry. Kaine v. Marion Prison Warden (2000), 88 Ohio St.3d 454, 727 N.E.2d 907. Therefore, we must reject the defendant's postulation to the trial court that the journal entry may reflect inaccuracies. Speculation of such magnitude would wreak havoc on the judicial system."
 {¶ 23} We, therefore, will not attempt to determine whether the journal entries accurately reflect which party requested the continuances, when the docket and journal entries do not indicate any obvious error.
 {¶ 24} The journal entries reflect the following continuances were requested by defense counsel: on March 2, 2001, a pretrial was continued until March 5, 2001; the March 5, 2001 pretrial was continued until March 15, 2001; on May 1, 2001, the pretrial was continued until May 8, 2001. Therefore, these continuances alone tolled the speedy trial time for twenty-two days.
 {¶ 25} Barnett also waived his speedy trial rights in writing several times as the trial date approached. On August 28, 2001, Barnett waived his rights until September 20, 2001. On September 13, 2001, he waived his speedy trial rights until October 22, 2001. On October 18, 2001, he waived his speedy trial rights until December 3, 2001. On November 26, he waived his speedy trial rights until December 20, 2001. Barnett's waiver of his speedy trial rights tolled the speedy trial time an additional 115 days.
 {¶ 26} The trial court then continued the trial from December 27, 2001 to January 3, 2002 because a jury was not available due to the holidays. R.C. 2945.72(H), states in part that the time will be tolled for "the period of any reasonable continuances granted other than upon the accused's own motion." Since the right to a jury trial is a constitutional right, a continuance to assure the defendant the choice of being tried by a jury is reasonable.
 {¶ 27} On January 3, 2002, the transcript reflects that the case was continued so that defense counsel could have eye surgery. This tolled the speedy trial time another day.
 {¶ 28} A computation of the above time indicates that Barnett was brought to trial within 247 days, well within the time limit of 270 days. Therefore, the trial court did not err in denying Barnett's motion to dismiss.
 {¶ 29} Barnett's first assignment of error is overruled.
 Sufficiency and Manifest Weight of the Evidence {¶ 30} In his second and third assignments of error, Barnett argues that his conviction for aiding and abetting a felonious assault was not supported by sufficient evidence and was against the manifest weight of the evidence because the trial court found that Barnett did not fire a gun.
 {¶ 31} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
 {¶ 32} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23; State v. Davis (1988), 49 Ohio App.3d 109, 113. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 {¶ 33} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 34} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 35} "The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown
(1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239." State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 36} Ohio's complicity statute, R.C. 2923.03(A) provides, "no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) aid or abet another in committing the offense." Ohio courts have defined "aiding and abetting" as assisting, inciting or encouraging. Horstman v. Farris
(1999), 132 Ohio App.3d 514, 527. In order to convict a defendant as an aider and abettor, "it must be proven beyond a reasonable doubt that he advised, hired, incited, commanded, or counseled the principal to do the act * * * or [had] some preceding connection with the transaction," i.e., one does not aid and abet if he merely sees a crime being committed. State v. Starr (1970), 24 Ohio App.2d 56, 58. The mere presence of the accused during the commission of a crime does not necessarily amount to being an accomplice. State v. Widner (1982),69 Ohio St.2d 267, 269.
 {¶ 37} Further, the accomplice's criminal intent may be inferred from the presence, companionship, and conduct of the accomplice both before and after the offense is committed. See State v. Nievas (1997),121 Ohio App.3d 451, 456; State v. Pruett (1971), 28 Ohio App.2d 29, 34. Circumstantial and direct evidence are of equal evidentiary value. SeeJenks, supra, at 272 (circumstantial evidence and direct evidence inherently possess the same probative value and in some instances certain facts can only be established by circumstantial evidence).
 {¶ 38} A review of the record indicates that there was sufficient evidence presented to support a finding that Barnett aided and abetted Charles Jackson in committing the crime. Barnett was not merely an innocent bystander. Evidence was presented that during the early morning hours preceding the shooting, Barnett had gone to Crenshaw's home. According to Cynthia Johnson, he told her to tell Crenshaw he was going to "cap a bitch," which she understood to mean shoot Crenshaw. The next day, Jackson went with Barnett to confront Crenshaw. Barnett drove Jackson's car, instead of his own. Witnesses saw Barnett flash his gun at Crenshaw. After the shooting, Barnett drove Jackson back to the bar.
 {¶ 39} Based on this evidence, there is enough circumstantial evidence supporting the trial court's finding that Barnett aided and abetted the felonious assault. Barnett desired to have Crenshaw shot; it appears that Jackson came with him to confront Crenshaw as his back-up, and Barnett aided Jackson in his escape by driving quickly away from the scene.
 {¶ 40} Although Barnett denied any knowledge that Jackson had a gun and there was conflicting testimony regarding Barnett's reaction to the shooting and whether he had a gun, such inconsistencies are for the trier of fact to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. Therefore, Barnett's conviction is not against the manifest weight of the evidence.
 {¶ 41} Barnett's second and third assignments of error are overruled.
 Ineffective Assistance of Counsel {¶ 42} In his fourth assignment of error, Barnett argues that counsel was ineffective for failing to present a defense to the prosecution's argument that Barnett aided and abetted in the felonious assault.
 {¶ 43} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668. Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential.State v. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 44} In the instant case, defense counsel did attempt to set forth a defense to aiding and abetting. He argued that there was no evidence that Barnett actually encouraged the shooting verbally or by gesturing to Jackson to shoot and that there was no evidence that a plan existed between Jackson and Barnett. This was the best argument counsel could set forth in light of the circumstantial evidence against his client. Barnett's fourth assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J. and ANN DYKE, J. CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] We find we have jurisdiction to entertain this appeal in spite of the fact that a motion for new trial remains pending. A new trial motion tolls the time for filing a notice of appeal, but does not deprive the Court of Appeals of jurisdiction to consider the appeal of the otherwise final appealable order. See, Stewart v. Zone Cab of Cleveland, Cuyahoga App. No. 79317, 2002-Ohio-335.