[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} This is an appeal by defendant, Randy B. Olverson, from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which defendant was found guilty of five counts of robbery.
 {¶ 2} On June 7, 2000, defendant and Wayne Eugene Smith, Jr., were charged under a seven-count indictment. Specifically, defendant was charged under counts one, two, three, four, five and seven with robbery, in violation of R.C. 2911.02, the indictment alleging robberies occurring on May 11, 2000 (Fifth-Third Bank), May 15, 2000 (National City Bank), May 18, 2000 (TelOhio Credit Union), May 23, 2000 (National City Bank), May 24, 2000 (Fifth-Third Bank), and May 29, 2000 (Super America store). Smith was charged under count six with the robbery of a Fifth-Third Bank on May 26, 2000, and under count seven with robbery of a Super America store on May 29, 2000.
 {¶ 3} Defendant was tried beginning on March 6, 2002. The first witness called by the state was Wayne Smith, who admitted that he was involved in a series of robberies with defendant during May 2000. Smith gave the following testimony at trial.
 {¶ 4} The first bank robbery in May 2000, occurred the day after Mother's day, and Smith's role was to drive the vehicle. Defendant told Smith "he needed me to drive a car for him to rob a bank." (Tr. Vol. I, at 66.) On that date, Smith was driving a 1991 Lincoln Town car, and defendant told him to park the car far enough from the bank so Smith would not be seen. Defendant, who was wearing a baseball cap and sunglasses, walked to the bank and returned a short while later with cash. Defendant gave Smith approximately $400 to $500 following this incident.
 {¶ 5} Approximately three or four days later, Smith drove defendant to the TelOhio Credit Union on Fourth Street, and defendant again went in alone and robbed the institution. Smith estimated that defendant obtained approximately $6,000.
 {¶ 6} After three or four more days, Smith and defendant drove around looking for another bank to rob. Smith parked in the vicinity of a Fifth-Third Bank in Clintonville, and defendant left the car for about five minutes, returning with approximately $1,400.
 {¶ 7} A fourth bank robbery occurred at a National City Bank on Morse Road. Smith again parked the car, and when defendant returned from the bank, he had money in his hand, but informed Smith that a dye packet had exploded. Defendant obtained approximately $300 from this incident.
 {¶ 8} Defendant and Smith discussed robbing another bank, and defendant indicated he wanted Smith to go in the bank this time while he waited in the car. Defendant drove to a downtown Fifth-Third Bank, and Smith went inside with a note, obtaining $1,200 from the teller.
 {¶ 9} The final incident occurred on Memorial Day. Because banks were closed that day, defendant and Smith discussed robbing a gas station. Smith drove to a Super America store on East Main Street, and defendant and Smith both went into the gas station to buy some coffee. While they were at the counter for coffee, defendant "ended up telling the teller this was a robbery." Id. at 89. One of the clerks placed money on the counter for defendant, and another clerk took the drawer out of the register and pushed the register toward Smith. Smith took the money out of the drawer and they left the station. Smith and defendant obtained $200 apiece following this incident, and they returned to Smith's house. Later that day, police officers arrived at Smith's house and both men were arrested. Smith subsequently entered a guilty plea to two counts of robbery.
 {¶ 10} In addition to Smith's testimony, the state presented the testimony of bank and store employees who were on duty at the time of the various robberies, as well as police officers and detectives involved in investigating the incidents.
 {¶ 11} On May 11, 2000, Fhilanvanh Nanthavongdoungaky was working as a teller at the Fifth-Third Bank branch on East Broad Street. On that date, an individual walked into the bank and told her "you are being robbed. Put the money on the counter." Id. at 219. Nanthavongdoungaky took money from a top drawer, and the man told her to give him hundreds and fifties. She then took money from a second drawer and placed it on the counter, and the man took it and fled. The man was wearing a black jacket, black ball cap and sunglasses. He also had a bandage on his face.
 {¶ 12} Detective Ronald Strollo of the Columbus Police Department participated in the investigation of the Fifth-Third Bank robbery on May 11, 2000. The detective obtained a surveillance tape from the bank, and still photographs were created from the tape. Detective Strollo spoke with Nanthavongdoungaky on the day of the incident, and she described the suspect as a black male, in his thirties, approximately 5'6", weighing 120 pounds. The detective later showed her a photo array that included defendant's photograph. Nanthavongdoungaky told the detective that two of the photographs looked similar to the suspect, but she could not positively identify him from the array. Defendant's photograph was one of the photographs she pointed to as resembling the suspect.
 {¶ 13} Laura Smith is a former teller at National City Bank, and was working at the downtown branch on May 15, 2000. On that date, an individual came into the bank and told her to give him all of her large bills. The man was wearing a dark jacket, dark hat and sunglasses. Smith gave the man approximately $2,000 in bills. Smith described the individual as 5'7" or 5'8" in height, weighing between 132 to 140 pounds, and 30 to 40 years of age.
 {¶ 14} On May 18, 2000, Lorenzo Holt was employed as a teller at TelOhio Credit Union, located on Fourth Street. On that date, a black male approached his teller station with a note demanding that the teller place twenties and fifties on the counter. Holt put money on the counter, and then turned and activated an alarm button as the robber fled. The man was wearing a dark jacket, dark navy hat, sunglasses, and had a Band-Aid on his face.
 {¶ 15} On May 23, 2000, Susan Biller, an employee of National City Bank, was working at the bank branch located at 1200 Morse Road. On that date, an individual came into the bank and handed her a note requesting hundreds and fifties. Biller took three fifty dollar bills out of a drawer and told the man that was all the money she had. The man then asked for twenties and tens, and Biller gave him "bait money," as well as money containing a dye pack. The man was wearing an olive-green sweat suit, a ball cap and sunglasses.
 {¶ 16} Christina Johnson, an employee of Fifth-Third Bank, works at the branch located at 3580 North High Street. On May 24, 2000, a man entered the bank and handed Johnson a note requesting twenties, fifties and hundreds. The man was wearing a maroon sweatshirt, black pants, a hat and brown-rimmed sunglasses. Johnson took money from a drawer and placed it on the counter, and the man took the money and walked out of the bank.
 {¶ 17} Peggy Kuntzman is an employee with the Ohio Department of Job and Family Training Services, located at 1120 Morse Road. On May 23, 2000, Kuntzman was outside her work building taking a smoke break when she observed a man running down the sidewalk. The man was wearing a warm-up jacket, a ball cap and sunglasses, and Kuntzman observed that he had dropped something. Kuntzman tried to get the man's attention, but then noticed that he had dropped a dye pack. Later that day, Kuntzman noticed a piece of paper in the parking lot near her building, and the paper had the words "tens" and "twenties" written on it.
 {¶ 18} Columbus Police Detective Lisa Smith is assigned to the robbery squad division. Detective Smith was involved in the investigation of the robbery at the Super America store on May 29, 2000. Detective Smith obtained a surveillance video from the store manager, and was able to isolate certain video stills and print out pictures of those stills. She testified that the individuals in the videotape looked similar to the suspects in the May 11 robbery. Detective Smith prepared a photo array with defendant's picture included, and showed it to the clerk at the Super America store. The clerk identified defendant's picture as one of the robbers.
 {¶ 19} On May 29, 2000, Corrinne Swan was working as a cashier at the Super America store, located at 2965 East Main Street, when two African-American males, one heavier-set, and one slimmer, walked into the store. The slimmer man purchased a cup of coffee and a pack of gum from Swan's register. The other man went to a second cashier and told the cashier that this was a "hold-up." The cashier put her drawer on the counter and the man proceeded to take the money out of the drawer. At about the same time, the slimmer man told Swan that this was a robbery, and Swan then put her drawer on the counter.
 {¶ 20} Following the events on May 29, a police detective showed Swan a photo array. Swan could not make an identification of the heavier-set individual, but as to the slimmer individual, Swan did not hesitate in choosing defendant's photograph, stating she was certain that the person in that picture was one of the robbers. At trial, she identified defendant as the individual who robbed her.
 {¶ 21} Rhonda Cadwallader is a latent fingerprint examiner for the Columbus Police Department. Cadwallader examined lifts taken from the scenes of the robberies in the instant case. Cadwallader testified that a print lifted from a note recovered in the Fifth-Third Bank incident on May 24, 2000 matched defendant's fingerprint.
 {¶ 22} Following the presentation of evidence, the jury returned verdicts finding defendant guilty of robbery as charged in counts one, three, four, five and seven. By judgment entry filed May 2, 2002, the trial court sentenced defendant to one year of incarceration as to count four, and two years of incarceration each as to counts one, three, five and seven.
 {¶ 23} On appeal, defendant sets forth the following three assignments of error for review:
 {¶ 24} "ASSIGNMENT OF ERROR I
 {¶ 25} "The court erred by not dismissing the indictment against the appellant for violation of his speedy trial rights.
 {¶ 26} "ASSIGNMENT OF ERROR II
 {¶ 27} "The court erred to the prejudice of appellant and committed plain error through its jury instructions.
 {¶ 28} "ASSIGNMENT OF ERROR III
 {¶ 29} "Appellant was denied ineffective [sic] assistance of counsel through his repeated attempt to waive appellant's right to a speedy trial and through his failure to argue for appropriate jury instructions."
 {¶ 30} Under his first assignment of error, defendant asserts the trial court erred in denying his motion seeking dismissal of the charges against him on speedy trial grounds.
 {¶ 31} R.C. 2945.71(C)(2) provides that an individual charged with a felony offense must be brought to trial within 270 days of his or her arrest. Further, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). However, the Ohio Supreme Court has held that the triple-count provision of R.C. 2945.71(E) is applicable only to those defendants held in jail in lieu of bail solely on the pending charges, and that the existence of a valid parole holder prevents application of that statutory provision. State v. Brown (1992), 64 Ohio St.3d 476, 479.
 {¶ 32} At the outset, we note that defendant raises an issue regarding whether he was subject to the triple-count provision of R.C. 2945.71(E). Specifically, defendant contends that, at the time of the hearing on the motion to dismiss, there was no proof that he was being held on a detainer in another case. We disagree.
 {¶ 33} In Brown, supra, the defendant made a similar argument, asserting that the state failed to present sufficient evidence of a parole holder. Under the facts of that case, the trial court heard evidence on the defendant's motion to dismiss; although a copy of the parole holder was not placed on the record, the state asserted that there was a parole holder on the defendant, and defense counsel did not dispute its existence. The trial court subsequently denied the defendant's motion to dismiss. In addressing the defendant's contention that the record failed to demonstrate the existence of a valid parole holder on the defendant, the Ohio Supreme Court held that, while it would have been helpful if a copy of the parole holder had been placed in the record, "there was other sufficient evidence of the parole holder for the trial court to deny Brown's motion to dismiss. The transcripts of the hearing on the motion to dismiss and the in-chambers conference on the day of trial provide sufficient evidence of a parole holder." Id. at 482.
 {¶ 34} In the present case, the record indicates that defense counsel acknowledged to the trial court that "[t]he federal courts * * * did put a holder on him[,]" and that "the holder was on him two days prior to him being charged on this case." (Tr. Vol. I, at 15.) Defense counsel further acknowledged that the state "would have 270 days in which to try Mr. Olverson." Id. at 16. Thus, similar to the facts of Brown, defense counsel did not dispute that a holder/detainer had been placed on defendant, and we conclude that the record sets forth a sufficient basis to find that there was a valid detainer on defendant. Accordingly, we find no merit to defendant's suggestion that the triple-count provision is applicable to the facts of this case.
 {¶ 35} We will therefore consider whether defendant was brought to trial within 270 days after his arrest, taking into consideration whether any of the continuances granted by the trial court resulted in a tolling of the statute. The speedy trial time begins to run when an accused is arrested for the offense at issue. R.C. 2945.71(C)(2). However, the actual day of the arrest does not count. State v. Stamps (1998),127 Ohio App.3d 219, 223.
 {¶ 36} Although defendant contends that he was arrested on May 29, 2000, as noted by the state, defendant was only under arrest on count five at that point, and was not charged with and arrested in connection with the other robberies until June 7, 2000. Thus, as to count five, a total of 646 days elapsed between May 29, 2000 and the date of trial on March 6, 2002, while on the other counts, a total of 637 days elapsed between June 7, 2000 and March 6, 2002. Based upon the number of days at issue, defendant has shown a prima facie case of speedy trial violations, requiring us to ascertain whether there are exceptions that would toll the speedy trial time. State v. Taylor (Oct. 5, 2001), Lucas App. No. L-98-1375.
 {¶ 37} Pursuant to R.C. 2945.72(H), the time within which an accused must be brought to trial may be extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." Further, an accused may waive his or her constitutional and statutory right to a speedy trial if such waiver is expressed in writing or made in open court on the record. State v. O'Brien (1987), 34 Ohio St.3d 7, paragraph one of the syllabus.
 {¶ 38} The record indicates that of the 12 continuances in this case, five were granted upon motion of the defendant. More specifically, the journal entries indicate the following continuances granted by the court upon motion of defendant: (1) from September 18, 2000 until October 2, 2000 (in order for appointment of new counsel for defendant); (2) from October 2, 2000 until November 13, 2000 (on the basis that counsel for defendant was recently appointed); (3) from November 13, 2000 until January 30, 2001 (because counsel for defendant was in a murder trial and needed time to prepare for trial); (4) from March 23, 2001 until June 1, 2001 (because defense counsel needed additional time to investigate defendant's "federal problems and the effect this case would have on them"); and (5) from September 17, 2001 until November 26, 2001 (because defense counsel was in a mitigation hearing in a death penalty case). As stated above, under R.C. 2945.72(H), continuances granted at defendant's request toll the speedy trial time. See, also, State v. Fields (1994),97 Ohio App.3d 337, 350. In the present case, the above continuances tolled the speedy trial time for a total of 274 days.
 {¶ 39} In addition to continuances requested by defendant, the record also indicates that two continuances were made upon the request of both defense counsel and the prosecution. First, a continuance was granted from August 1, 2000 until September 18, 2000, "upon motion of the parties," in order to allow both sides additional time to prepare for trial. The entry also indicated that the court was in trial. Counsel for defendant signed the entry, which contained language providing that "[d]efendant waives the right to a speedy trial for the period of this continuance * * *."
 {¶ 40} Defendant contends that this continuance should be charged against the state because he did not sign the waiver himself. However, the Ohio Supreme Court has held that "[a] defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." State v. McBreen (1978), 54 Ohio St.2d 315, syllabus. See, also, State v. Taylor, 98 Ohio St.3d 27, 32, 2002-Ohio-7017. Based upon the holding in McBreen, we find unpersuasive defendant's contention that the waiver was ineffective, and we conclude that this continuance tolled the speedy trial time for an additional 48 days.
 {¶ 41} The court granted another continuance from August 8, 2001 until September 17, 2001, upon motion of the parties and the court, because the court was in trial. Again, counsel for defendant signed the entry containing waiver language, and therefore this continuance tolled the speedy trial time for 40 days.
 {¶ 42} By entry filed February 2, 2000, upon motion of the state, the court continued the case from January 30, 2001 to March 23, 2001, on the ground that the prosecutor was in trial. While this continuance was made at the request of the state, both defense counsel and defendant signed the entry containing the right to speedy trial waiver language. Thus, defendant's execution of this waiver tolled the speedy trial time an additional 51 days.
 {¶ 43} The state argues that, in computing the above periods in which the statute was tolled, the record shows defendant was brought to trial within 233 trial days on the robbery charge under count five, and within 224 days on the remaining charges, and therefore defendant was not tried beyond the statutory 270-day limitation. We agree with the state's contention, and find that no speedy trial violation occurred under the facts of this case. Further, in light of the above determination, we need not consider whether any of the other continuances granted by the court may have further tolled the time.
 {¶ 44} Based upon the foregoing, defendant's first assignment of error is without merit and is overruled.
 {¶ 45} Under the second assignment of error, defendant asserts the trial court erred in two separate instances concerning the issue of jury instructions. Defendant first argues that the court erred in its instruction regarding the definition of circumstantial evidence. Specifically, defendant cites the following portion of the court's instruction to the jury: "You may not make one inference from another inference, but you may draw more than one inference from the same facts or circumstances. That would be direct evidence." (Tr. Vol. IV, at 950.) Defendant argues the court confused the jury by indicating that an inference from the same facts or circumstances would be direct evidence.
 {¶ 46} At the outset, we note that no objection was made to the court's instruction, and therefore this court's review is under the plain error standard. Plain error will not be found unless a reviewing court can say that, but for the error, the outcome of the trial clearly would have been different. State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 47} In the present case, based upon a review of the overall instructions provided by the court, we do not find plain error. Although defendant focuses upon the above portion of the instruction, the record indicates the trial court provided the jury with other instructions regarding the definitions of "direct evidence" and "circumstantial evidence." Specifically, the trial court informed the jury that direct evidence is "evidence which directly proves a fact without having to make an inference from that fact to create some other fact." (Tr. Vol. I, at 32.) The trial court further informed the jury that circumstantial evidence "is using direct evidence, making an inference from that, a reasonable inference from that, and the inference then becomes the circumstantial evidence. It's basically saying you infer a fact from some direct evidence." Id. at 33. The court later instructed the jurors that, "[d]irect evidence is the testimony given by a witness who has seen or heard the facts to which the witness testifies," and that "[c]ircumstantial evidence is the proof of facts or circumstances by direct evidence, from which you may reasonably infer other related or connected facts, which naturally and logically follow, according to the common experience of humankind." (Tr. Vol. IV, at 949-950.) The court's latter instructions on direct and circumstantial evidence are drawn directly from Ohio Jury Instructions, Section 405.01.
 {¶ 48} The Ohio Supreme Court has held that "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v. Price (1979),60 Ohio St.2d 136, paragraph four of the syllabus. Here, construing the instructions as a whole, we conclude that the reference cited by defendant does not constitute plain error because "other instructions given by the court limited any prejudicial effect." State v. Jalowiec (2001), 91 Ohio St.3d 220, 231.
 {¶ 49} Defendant also contends the trial court erred in failing to give an "accomplice testimony" instruction pursuant to R.C. 2923.03(D). Defendant concedes that his trial counsel did not request such an instruction, and therefore defendant has waived all but plain error on this issue.
 {¶ 50} R.C. 2923.03(D) states as follows:
 {¶ 51} "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 {¶ 52} " `The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 53} "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.' "
 {¶ 54} As noted by the state, co-defendant Wayne Smith was not charged in counts one through five of the indictment, and he was only charged together with defendant under count seven, relating to the robbery of the Super America store. It has been held that an instruction under R.C. 2923.03(D) "is not required when the witness is not charged with complicity as a result of involvement with the defendant's criminal activities." State v. Sillett, Butler App. No. CA2000-10-205, 2002-Ohio-2596, at ¶ 17.
 {¶ 55} Moreover, assuming, arguendo, that the trial court should have provided the jury an accomplice instruction concerning count seven of the indictment, defendant cannot show plain error. A review of the record indicates that defense counsel cross-examined co-defendant about issues of self-interest (i.e., whether he benefited from agreeing to testify against defendant), and thus the jury had information from which to form a "healthy skepticism" about his testimony. State v. Mitchell (Apr. 26, 2002), Clark App. No. 2001 CA 29. Further, the record indicates that the court gave jury instructions on the issue of witness credibility, including matters of "interest and bias." (Tr. Vol. IV, at 951.) Finally, there was other corroborating evidence to support defendant's conviction regarding the Super America store robbery, including identification testimony by the store clerk. Accordingly, based upon the record before this court, we cannot conclude that the outcome of the trial would have been any different had the instruction been given.
 {¶ 56} Based upon the foregoing, defendant's second assignment of error is without merit and is overruled.
 {¶ 57} Under his third assignment of error, defendant asserts that he was denied effective assistance of counsel because of his counsel's repeated attempts to waive his right to a speedy trial and by failing to argue for appropriate jury instructions.
 {¶ 58} In State v. Redman, Stark App. No. 2002CA00097, 2003-Ohio-646, ¶¶ 33-35, the court noted the standard for reviewing an ineffective assistance of counsel claim as follows:
 {¶ 59} "* * * Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052 * * * in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. * * *
 {¶ 60} "In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. * * * Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. * * *
 {¶ 61} "In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. * * * A reasonable probability is a probability sufficient to undermine confidence in the outcome." * * * (Citations omitted.)
 {¶ 62} Regarding the speedy trial issue, defendant argues that it is apparent his trial counsel was actively involved in litigating other criminal cases, and that numerous continuances were charged to the client for conduct beyond his control.
 {¶ 63} At the outset, we agree with the state's contention it cannot be determined from the record on direct appeal the reasons trial counsel did not press for a more speedy trial. While the record shows that trial counsel requested additional time to prepare for trial because of involvement in at least one other criminal case, there is nothing to indicate that the requests were improper, or that any delay was caused by deficient performance. Because the record does not support a claim for ineffective assistance of counsel, we decline to speculate or presume that counsel was ineffective.
 {¶ 64} Further, even assuming that defendant's trial counsel's performance was deficient, defendant would still be required to show that, but for such deficient performance, the outcome of his trial would have been different. Apart from an apparent claim that the length of delay was presumptively prejudicial (a claim more relevant to speedy trial analysis than ineffective assistance of counsel), defendant does not contend that the delay caused actual prejudice to his defense. As suggested by the state, an earlier trial may have been more beneficial to the prosecution, allowing it to present witnesses with a fresher recollection of the events. Further, we note that defendant did not call any defense witnesses, and thus there is nothing to indicate that an earlier trial would have aided the defense's case. Upon review, we conclude that defendant is unable to show that there is a reasonable probability that a more speedy trial would have resulted in a different outcome.
 {¶ 65} Regarding defense counsel's failure to object to the instruction regarding circumstantial evidence, we have previously held that the trial court's other instructions on circumstantial evidence limited any prejudicial effect. Thus, because defendant has failed to show prejudice, he cannot state a claim of ineffective assistance of counsel on this issue.
 {¶ 66} Accordingly, defendant's third assignment of error is without merit and is overruled.
 {¶ 67} Based upon the foregoing, defendant's three assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
TYACK and DESHLER, JJ., concur.