DECISION.
{¶ 1} Defendant-appellant Jermaine Johnson was indicted on one count of aggravated robbery and two counts of robbery as a result of an incident at a McDonald's restaurant.[1] All three counts contained firearm specifications. He was tried before a jury and found guilty on all three counts and specifications. The trial court imposed consecutive sentences for the three counts but merged the firearm specifications into one three-year term of incarceration. The court added one more consecutive year of incarceration for a postrelease-control violation in another case. The court imposed an aggregate sentence of 18 years' incarceration. This appeal followed.
 The Facts {¶ 2} Shortly after midnight on November 23, 2004, the McDonald's restaurant in the Clifton Heights area of Cincinnati was robbed by two men, one displaying a gray and black handgun. Thompson Kweinavah and Lashaunda Bethany were the managers on duty during the robbery. The robbers first approached Kweinavah and ordered him to open the safe. Kweinavah was visibly shaking and could not remember the code to open it. He summoned Bethany for help. The robbers became impatient and moved away from the safe. They ordered the managers to quickly open the registers in the front of the store and at the drive-through window. The robbers left with all the cash that had been in the registers, mostly five-, ten-and 20-dollar bills.
 {¶ 3} Both managers testified that the men wore hooded jackets and translucent face masks that showed dark complexions underneath. Both testified that the men were tall, and Bethany added that they were slender.
 {¶ 4} Bethany and Kweinavah separately called 911 after the robbers left. The 911 tapes were played for the jury. Surveillance video of the store confirmed that there were two hooded assailants.
 {¶ 5} William Gaz was picking up his order at the drive-through window when he noticed that the restaurant was being robbed. He called 911 and described the robbers as "two young black men" wearing dark hoods and face masks. Operating his Jeep, Gaz followed the only other vehicle leaving the area, which he had observed taking a quick turn onto another street. Gaz trailed the vehicle for several streets and observed that it was being driven "at a high rate of speed and erratically." The vehicle came to a stop at the intersection of Rice and Mulberry Streets. The driver and two passengers all exited during a 30-second span. Two of the men ran between two buildings, and the other ran down a hillside. The man who had exited from the front passenger door fired a shot at Gaz before retreating, striking Gaz's vehicle. This man was wearing a khaki or tan-colored hooded coat. Gaz told the 911 operator that he thought the three men were the robbers whom he had seen inside McDonald's. He described the suspects' vehicle as a blue-green Hyundai Elantra. Gaz's 911 tape was also played for the jury.
 {¶ 6} Police Officer John Neal, a canine handler, heard the dispatch about a robbery in progress at McDonald's around 12:08 a.m. While driving to the McDonald's, he received a radio call directing him to the suspects' vehicle on Mulberry Street. He arrived at the suspects' vehicle at 12:22 a.m. with Maximus, a purebred German Shepard trained in tracking. The vehicle was empty and the doors were open. Maximus sniffed the inside of the car and was shown the area where the suspects had last been seen. Neal gave him the order to find the track, and Maximus immediately began strongly pulling Neal between the two houses on Mulberry Street where two of the suspects had fled. Maximus led Neal and other officers on a southeastern trail without hesitation. Along the trail, the dog found tan coveralls that he picked up with his mouth and thrashed around. After traversing over a retaining wall, through woods, across streets, and through an alley, Maximus forcefully headed towards a dilapidated carriage house. After he reached the old carriage house, he raised his nose to the sky. The police found Johnson and another suspect, Clifford McNeal, huddled up together on a rafter in the far corner of the attic. Both men were wearing dark hooded sweatshirts. Johnson had a wad of money totaling $236 stuffed inside his pants. Both men were arrested. McNeal was taken back to McDonald's and positively identified as one of the robbers.
 {¶ 7} Officer Matthew Latzy, who had assisted in the search led by Maximus, found a gray and black handgun in the lot adjacent to the carriage house where Johnson and McNeal were hiding. The 9-mm semiautomatic handgun contained nine cartridges and one casing. The handgun was ready to fire. Police Officer Colin Vaughn testified that he later test-fired the weapon and found it to be "capable of expelling a projectile by means of a combustible propellant."
 {¶ 8} Vaughn also collected evidence from Johnson's and McNeal's hands by using a gunshot-residue kit. Officer Michael Trimpe, a forensic scientist specializing in trace-evidence examination, conducted tests on the gunshot-residue kit submitted by Officer Vaughn. Trimpe testified that the samples from both suspects' hands contained primer residue that had come from a fired weapon.
 {¶ 9} The police apprehended the third suspect, Alex Ford, shortly after Ford had run from the vehicle on Mulberry Street. Ford testified at trial that he had met Johnson and McNeal for the first time on November 22 at the house of a mutual friend. Johnson and McNeal had come in and out of the house several times during the day. Late in the evening, Ford left the friend's house, intending to walk to his aunt's house. After leaving the house, he saw Johnson and McNeal and asked them for a ride. They took him to his aunt's house in a small teal-colored vehicle, but she was not there. Ford returned to the vehicle and watched McNeal drop an automatic firearm on the vehicle's floor. Ford picked up the gun and returned it to McNeal. Later, Johnson held the gun as they drove to the McDonald's on Calhoun Street. When they arrived, Johnson and McNeal forced Ford to move to the driver's seat.
 {¶ 10} Johnson and McNeal then headed toward the restaurant, donning masks. Johnson was holding the gun and wearing a dark hood. Both men went inside while Ford waited in the car. When they returned, they ordered Ford to drive fast. Ford noticed a white Jeep following them. On Mulberry Street, he stopped the vehicle, exited, and ran down a hill. He saw McNeal shoot at the driver of the Jeep.
 {¶ 11} On cross-examination, Ford admitted that an aggravated-robbery charge was still pending against him. A taped statement that he had given to the police after his arrest was played for the jury. This statement was consistent with his trial testimony.
 {¶ 12} Johnson presented the testimony of his cousin, Linda Jones, as his only witness. She did not have any knowledge of Johnson's whereabouts on the day of the robbery.
 {¶ 13} After examining the evidence, the jury found Johnson guilty of aggravated robbery, two counts of robbery, and the accompanying firearm specifications.
 The Assignments of Error {¶ 14} Johnson raises five assignments of error in this appeal. In his first assignment of error, he claims that the multiple convictions violated his double-jeopardy rights. In his second, third, and fourth assignments of error, he challenges the sufficiency and weight of the evidence to support his convictions. In his final assignment of error, he argues that his sentence was contrary to law because the trial court sentenced him under an unconstitutional statute. We address Johnson's sufficiency and weight arguments first.
 Sufficiency and Weight {¶ 15} Johnson argues that the state failed to meet its burden of proving every element of the offenses beyond a reasonable doubt. In reviewing his claim, this court must determine whether, after viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the offenses proved beyond a reasonable doubt.[2]
 {¶ 16} Johnson was convicted of the aggravated robbery of McDonald's with a firearm specification and the robbery of McDonald's. To establish the commission of the aggravated robbery, the state had to present evidence that Johnson, in attempting or committing the theft of currency from the McDonald's restaurant, or in fleeing immediately thereafter, had a deadly weapon on or about his person or under his control, and that he either displayed the weapon, brandished it, indicated that he possessed it, or used it. Further, to establish the commission of the firearm specification, the state had to present evidence that, while committing the aggravated robbery, Johnson had on his person or under his control a firearm, and that he displayed the firearm, brandished the firearm, indicated that he possessed a firearm, or used it to facilitate the aggravated robbery.[3] The state also had to present evidence that the firearm was operable or that it could have readily been rendered operable.[4]
 {¶ 17} Finally, to establish the commission of the robberies, the state had to present evidence that Johnson, in committing or attempting to commit the theft of currency from the McDonald's restaurant, or in fleeing immediately thereafter, inflicted or attempted to inflict physical harm on Lashaunda Bethany and Thompson Kweinavah.
 {¶ 18} After a review of the record, we hold that the state presented sufficient evidence of all the elements of these offenses. Both McDonald's managers testified that two masked men ordered them to open the cash registers. At least one of the assailants displayed and, at times, brandished a black and gray handgun. Johnson fit the description of one of the assailants that the managers had given to the police.
 {¶ 19} Gaz, who witnessed the robbery from the drive-through window, chased the only vehicle leaving the area after the robbery. He testified that at least one of the occupants of the vehicle was wearing a dark hood similar to the one worn by the robber whom he had seen from the drive-through window.
 {¶ 20} Using a tracking dog, the police found Johnson and McNeal hiding on a rafter in the attic of an old carriage house several blocks from where the blue-green vehicle had been abandoned. Johnson had a wad of money inside his pants. The police recovered a black and grey handgun on the ground within throwing distance of the carriage house. The state presented testimony that the handgun was operable and that when Johnson was apprehended, his hands contained firearm residue. Finally, the state presented the testimony of Johnson's accomplice, Alex Ford. Ford's testimony fully corroborated the state's evidence.
 {¶ 21} Johnson alleges that the evidence was insufficient because the state did not present much direct evidence establishing his guilt. But the state presented ample circumstantial evidence demonstrating Johnson's participation in the offenses. Under Ohio law, circumstantial evidence possesses the same probative value as direct evidence.[5] As a result, we hold that the state presented sufficient evidence of every element of the offenses.
 {¶ 22} Next, Johnson argues that the convictions were against the manifest weight of the evidence. To examine this claim, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence," the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[6] After this examination, we should grant a new trial only if we are convinced that a reasonable trier of fact could not have concluded that the defendant was guilty.[7]
 {¶ 23} Johnson claims that the jury should not have given any weight to the testimony of his accomplice Ford, and that it was only Ford's testimony that directly placed him at the scene of the crimes. But the jurors were free to believe Ford, although they were instructed to view his testimony with suspicion. Ford's testimony was corroborated by the other evidence, and we cannot say that the trier of fact lost its way in rendering its guilty verdict.
 {¶ 24} Johnson's convictions were supported by sufficient, credible evidence. According, Johnson's second, third, and fourth assignments of error are overruled.
 Double Jeopardy {¶ 25} Next, we address Johnson's first assignment of error, which alleges a Double Jeopardy Clause violation. He argues that the trial court should have merged the aggravated robbery and the two robberies because they were allied offenses of similar import, committed with one animus during the same transaction. We agree in part.
 {¶ 26} The Double Jeopardy Clause prevents a sentencing court from imposing a greater punishment for an offense than the legislature intended.[8] The Ohio legislature, in promulgating the multiple-count statute,[9] has expressed its intent to allow, in some cases, for cumulative sentencing for offenses that arise out of the same conduct, including offenses of dissimilar import.[10] To determine whether two crimes are of dissimilar import, we must review the statutory elements of the offenses in the abstract, in accordance with the test developed by the Ohio Supreme Court in State v. Rance.[11] Where the elements of the offenses do not correspond to such a degree that the commission of one offense will result in the commission of the other, the offenses are of dissimilar import, and the court may enter separate convictions for each offense.[12]
 {¶ 27} Johnson was convicted of one count of aggravated robbery in violation of R.C. 2911.01(A)(1). That statute provides that "[n]o person, in attempting or committing a theft offense * * * shall * * *[h]ave a deadly weapon on or about the offender's person or under theoffender's control and either display the weapon, brandish it, indicatethat the offender possesses it, or use it." (Emphasis added.)
 {¶ 28} He was also convicted of two counts of robbery in violation of R.C. 2911.02(A)(2). This statute provides that "[n]o person, in attempting or committing a theft offense * * * shall * * *[i]nflict, attempt to inflict, or threaten to inflict physical harm onanother." (Emphasis added.)
 {¶ 29} Aggravated robbery in violation of R.C. 2911.01(A)(1) and robbery in violation of R.C. 2911.02(A)(2) are offenses of dissimilar import under the Rance test, because when the elements of the offenses are compared in the abstract, the commission of one offense will not necessarily result in the commission of the other.[13] Therefore, the trial court correctly declined to merge the robbery offenses with the aggravated robbery.
 {¶ 30} Now we address whether the trial court should have merged the two robbery offenses into one conviction. Both counts alleged violations of R.C. 2911.02(A)(2). These counts not only involved allied offenses of similar import, but they actually involved the same offense with the same statutory elements. Where a defendant is charged with two or more counts of the same offense against the same victim, the court must merge the offenses into one conviction unless the evidence demonstrates that the offenses were committed with a separate animus or by separate conduct.[14] "Animus" has been defined as "purpose" or "immediate motive."[15] When a defendant takes property from different victims during the same robbery incident, a separate animus exists as to each victim, allowing for separate robbery convictions.[16]
 {¶ 31} In this case, the state indicted Johnson on two robbery counts alleging violations of R.C. 2911.02(A)(2), because Johnson had threatened harm to both McDonald's managers during the theft of currency from the restaurant. But Johnson did not commit or attempt to commit a theft of any personal property from the managers or from anyone other than McDonald's. Thus, the record demonstrates that Johnson threatened harm to both managers for the singular purpose of depriving McDonald's of its property.[17] Therefore, Johnson did not have a separate animus for each robbery offense.
 {¶ 32} Likewise, the two robbery offenses were committed during one continuous course of conduct, even though Johnson had approached Kweinavah with the handgun shortly before Bethany became involved in unlocking the cash registers. Because the robbery offenses were committed during a continuous course of conduct, the offenses were not committed separately.[18]
 {¶ 33} In conclusion, because Johnson was convicted twice for the same robbery offense, one of his robbery convictions must be reversed.
 Consecutive Terms of Incarceration {¶ 34} In his final assignment of error, Johnson argues that the trial court relied upon an unconstitutional statute when it sentenced him to consecutive terms of incarceration. He requests that this court vacate the consecutive sentences and remand the case for resentencing.
 {¶ 35} The trial court sentenced Johnson to consecutive terms of incarceration after applying the provisions of R.C. 2929.14(C). After Johnson was sentenced, the Ohio Supreme Court in State v. Foster held that R.C. 2929.14(C) was unconstitutional, and the court severed this provision and others from the statutory sentencing scheme.[19] Because Johnson was sentenced under an unconstitutional statute, his consecutive sentences must be vacated and the case remanded for resentencing.[20]
 {¶ 36} Accordingly, we sustain the fifth assignment of error and vacate the sentences.
 {¶ 37} In sum, because we have held that Johnson improperly received multiple sentences for the robbery offenses, we vacate those sentences for the reasons given in response to the first assignment of error. And we must also vacate the remainder of the sentences due to the error in making the sentences run consecutively. We remand this case for resentencing in accordance with law, with the proviso that the trial court may impose only one sentence for the two robbery offenses. In all other respects, the trial court's judgment is affirmed.
Judgment affirmed in part, sentences vacated, and cause remanded.
GORMAN, P.J., PAINTER and WINKLER, JJ.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] Johnson had also been indicted in the case numbered B-0411450 for a felonious assault that had occurred as he fled from the robbery. He was tried on that crime before the same jury, but the jury acquitted him of the charge.
[2] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[3] R.C. 2941.145.
[4] R.C. 2923.11(B)(1).
[5] See Jenks at paragraph one of the syllabus.
[6] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[7] Id.
[8] See State v. Rance, 85 Ohio St.3d 632, 635, 1999-Ohio-291,710 N.E.2d 699, quoting Missouri v. Hunter (1983), 459 U.S. 359, 366, 103 S.Ct. 673.
[9] R.C. 2941.25.
[10] See Rance at 635-636.
[11] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[12] Id. at 638.
[13] See State v. Palmer, 148 Ohio App.3d 246, 2002-Ohio-3536,772 N.E.2d 726, at ¶ 13.
[14] R.C. 2941.25(B).
[15] State v. Logan (1979), 60 Ohio St.2d 126, 131,397 N.E.2d 1345.
[16] See State v. Battle, 10th Dist. No. 03AP-39, 2003-Ohio-4687, at ¶¶ 36-38.
[17] Id.
[18] State v. Fields (1994), 97 Ohio App.3d 337, 346-347,646 N.E.2d 866.
[19] See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, paragraphs one and two of the syllabus.[20] Id. at ¶ 104.
[20] Id. at ¶ 104.