{¶ 1} After a jury found defendant-appellant Nashum Johnson guilty of two counts of aggravated robbery and two counts of felonious assault, all with three-year and one-year firearm specifications, Johnson appeals.
 {¶ 2} He presents five assignments of error in which he claims the fairness of his trial was tainted by the prosecutor's improper closing argument and by the trial court's procedure in permitting the jurors to ask questions of the witnesses. He further claims that the trial court improperly convicted him of all the offenses in *Page 3 
contravention of R.C. 2941.25(A), and, thus, his trial counsel rendered ineffective assistance for failing to raise this issue during sentencing.
 {¶ 3} This court has reviewed the record with Johnson's claims in mind and concludes that trial court's procedure with regard to juror questions was not improper, that the trial court's instructions rendered harmless the error committed by the prosecutor during closing argument, and that defense counsel made an argument at sentencing that his client's convictions constituted allied offenses. Nevertheless, the court properly entered its judgments of convictions.
 {¶ 4} Therefore, Johnson's convictions on two counts of aggravated robbery and two counts of felonious assault, with firearm specifications, are affirmed. The trial court, moreover, acted properly when it ordered the convictions "merged" for purposes of sentencing. Thus, the total sentence imposed also is affirmed.
 {¶ 5} Johnson's convictions result from an incident that occurred in the early morning of June 18, 2005. The victim, Rodelio Burton, testified that he had concluded his work shift at 1:30 a.m., and was waiting for a bus in a shelter located at the corner of East 65th Street and Broadway Avenue in the city of Cleveland. Although most of the nearby business establishments were closed, an open fast-food restaurant was "right across the street," and several light poles stood in the area. The bus ordinarily arrived at approximately 2:20 a.m. *Page 4 
 {¶ 6} While Burton waited, he noticed that some young men riding bicycles arrived at the intersection. One of them, whom he later identified as Johnson, called out to him and stopped within a few feet. Johnson asked if Burton remembered him, stating that he was "Eunice's grandson." "Eunice" was a close acquaintance, and Burton "looked at [Johnson] and * * * said, `Yeah, I remember you."'
 {¶ 7} Burton indicated that he had last seen Johnson approximately five years before, but had known the whole family, including Johnson, quite well for a period of some time. Johnson informed Burton that he lived in that neighborhood, on "Regency." The two exchanged a few more pleasantries, then Johnson rode away with the others.
 {¶ 8} A short time later, one of Johnson's companions, whom Burton later identified as co-defendant Mitchiral Smith, returned. Smith spoke with Burton briefly; Burton thought he was offering to sell drugs. Burton declined, and Smith left.
 {¶ 9} However, a few minutes after that exchange, both Johnson and Smith rode back to the bus shelter. Johnson "pulled out a gun," pointed it at Burton's chest area, and demanded he "give [him] all [his ] shit." According to Burton, the gun looked like a "nine millimeter" and "was chrome colored." Johnson then "grabbed" Burton's cellular telephone and the wireless headset he wore. Smith, in the meantime, rifled through the "bookbag" Burton had set down on the bus shelter's bench. *Page 5 
 {¶ 10} As the two young men appropriated his belongings, Burton stood and began to walk swiftly toward the fast-food restaurant. He reached the midway point when he "heard a gunshot." Burton turned. He saw Johnson had dropped his cellular telephone and was placing the gun into his pocket, while Smith was fleeing with the bag.
 {¶ 11} By the time Burton reached the restaurant, he noticed his leg was bleeding. A customer already had called the police; therefore, a patrol car arrived before Burton was transported to the emergency room with a gunshot wound to his left leg. Burton indicated he could identify one of the assailants as a friend's relative who lived on "Regent."
 {¶ 12} The following day, after he received treatment for his wound, Burton went to see Eunice Lacey at her home. Upon obtaining Johnson's name, he took the information to the police. The officer arranged a photographic array that included Johnson's driver's license picture, and Burton chose it as one of his assailants. He identified Smith a few months later.
 {¶ 13} Johnson and Smith were indicted together on four counts. As it pertained to Johnson, the indictment charged him with two counts of aggravated robbery and two counts of felonious assault; each count contained both a one and a three year firearm specification. The co-defendants were tried together before a jury. *Page 6 
 {¶ 14} After hearing the testimony, the jury found Johnson guilty on all counts and specifications. Subsequently, the trial court sentenced him to serve a term of three years for the specifications, prior to and consecutive with concurrent terms of seven years on each count, for a total of ten years.
 {¶ 15} Johnson presents the following assignments of error for review.
 {¶ 16} "I. Nashum Johnson was denied his rights under the Fifth andFourteenth Amendments when the State of Ohio was permitted to argue as to his failure to present testimony in his defense.
 {¶ 17} "II. The trial court erred in allowing the jurors to submit questions of the witnesses at trial.
 {¶ 18} "III. The prosecution violated Mr. Johnson's constitutional rights under Article I, Section 10 of the Ohio Constitution, theFifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument designed to appeal to the passions of the jury.
 {¶ 19} "IV. Nashum Johnson should not have been convicted of all four counts as Count Two is an allied offense of Count One and Count Four is an allied offense of Count Three. *Page 7 
 {¶ 20} "V. Nashum Johnson was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to object to his multiple sentences for allied offenses of similar import."
 {¶ 21} Johnson's assignments of error will be addressed in logical order.
 {¶ 22} In his second assignment of error, he argues that the trial court erred when it permitted jurors to submit individual questions to the witnesses at trial. He claims that the procedure the trial court employed was not entirely consistent with the one approved in State v.Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, and, further, that even if the procedure utilized followed Fisher, nevertheless, Fisher "was wrongly decided."
 {¶ 23} The Ohio Supreme Court held in Fisher that allowing jurors to submit questions to witnesses was a matter entrusted to the sound discretion of the trial court and the procedure did not violate any constitutional provisions. State v. Sanford, Cuyahoga App. No. 84478,2005-Ohio-1009, ¶ 18.
 {¶ 24} Thus, the trial court may direct jurors to submit any questions in writing to the court reporter; the reporter then hands them to the judge, the judge discusses the questions at sidebar with counsel, and, the judge ultimately reads the ones deemed legally acceptable to the witness for an answer. Id.,4|17. The record of this case reflects the trial court followed proper procedure. *Page 8 
 {¶ 25} This court has "declined" to adopt a position that contravenes the supreme court's decision; thus, Johnson's argument is rejected.State v. Berry, Cuyahoga App. No. 87493, 2007-Ohio-278, 4|43.
 {¶ 26} Accordingly, Johnson's second assignment of error is overruled.
 {¶ 27} Johnson's first and third assignments of error actually present a single claim, viz., that the prosecutor engaged in misconduct during closing argument that so tainted the fairness of his trial that the trial court's "curative" instructions were inadequate. After a review of the record, this court agrees that the prosecutor engaged in improper argument. However, this court cannot agree that the trial court's actions failed to ameliorate the error.
 {¶ 28} In order to determine whether prosecutorial misconduct occurred, a reviewing court must determine whether the statements were improper, and if so, whether in the context of the entire record, they affected the defendant's substantial rights, including his right to a fair trial. State v. Papp (1978), 64 Ohio App.2d 203; State v.Smith (1984), 14 Ohio St.3d 13; State v. Ford, Clark App. No. 2005-CA-76, 2006-Ohio-2108. See also, State v. Poling, Portage App. No. 2004-P-0044, 2006-Ohio-1008, ¶ 17, citing State v. Smith,87 Ohio St.3d 424, 442, 2000-Ohio-450.
 {¶ 29} With respect to closing argument, the prosecutor is entitled to a certain degree of latitude. State v. Apanovich (1987),33 Ohio St.3d 19. Isolated comments, therefore, should not be taken out of context and given their most *Page 9 
damaging meaning. State v. Carter, 89 Ohio St.3d 593, 2000-Ohio-172. Nevertheless, the prosecutor must confine himself to certain limits.State v. Liberatore (1982), 69 Ohio St.2d 583. One of those limits is contained in the Fifth Amendment to the United States Constitution, which embodies a defendant's right against self-incrimination.
 {¶ 30} After the trial court gave the jury its instructions of law, the case proceeded to closing arguments. The prosecutor stated during his rebuttal closing argument that, because of Burton's testimony, "the evidence in this case is undisputed. There's no other side of the story. There is Mr. Burton, who testified, and told you what happened."
 {¶ 31} The trial court sustained defense counsel's objection to this remark, and informed the jury to "disregard that `one side.'" To the prosecutor, the court admonished, "Counsel, you carry the burden of proof in this case. * * *."
 {¶ 32} Despite this admonition, however, the prosecutor proceeded to misquote Burton's testimony. This caused the court to sustain another defense objection, and to remind the prosecutor that photographs were admitted "for identification purposes only," and he was "to comply with that order."
 {¶ 33} The prosecutor parted with the final comment that "[p]eople talk about the burden of proof. People talk about that the weight always lies with the state. Well, you heard the evidence. You heard a guy come in, wasn't high on drugs, *Page 10 
wasn't doing anything except coming home from work. And I want you to think about this when you go back to your community, because your friends are gonna ask you, * * * tell me about your case.* * *" Burton had "no reason to lie" because he had "no beef with any of these people."
 {¶ 34} Before giving the case to the jurors, the trial court reminded them to "follow the instructions," and to "refer to the jury charge as * * * given * * * to you." Outside the jury's hearing, the court noted for the record that it agreed with the defense assertion that the prosecutor's comments on the defendant's silence were "way off base" and "absolutely wrong." Nevertheless, the court believed a mistrial was inappropriate because it had "immediately" addressed the defendant's concerns by providing curative instructions to the jury when those comments were made.
 {¶ 35} The jury is presumed to follow the instructions provided, therefore, this court cannot find that the trial court abused its discretion in making this determination. Pang v. Minch (1990),53 Ohio St.3d 186; State v. Stout (1987), 42 Ohio App.3d 38. Under circumstances in which the evidence of Johnson's guilt was overwhelming, moreover, this court cannot gainsay the trial court's assessment, and determine that the improper argument tainted the fairness of Johnson's trial.State v. Berry, supra, at 4|54. *Page 11 
 {¶ 36} For the foregoing reasons, Johnson's first and third assignments of error also are overruled.
 {¶ 37} Johnson argues in his fourth assignment of error that, pursuant to R.C. 2945.21(A), the trial court improperly convicted and sentenced him on all four counts. In his fifth assignment of error, he claims that trial counsel provided ineffective assistance for failing to bring this issue to the court's attention at sentencing.
 {¶ 38} The latter claim is rejected because the record reflects counsel did raise this issue at sentencing; the trial court simply ignored it. Thus, Johnson's fifth assignment of error is overruled.
 {¶ 39} Furthermore, the court correctly overruled the argument. R.C. 2945.21(A) provides: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one." (Emphasis added.) Subsection (B), however, permits a defendant to be convicted of and punished for multiple offenses of dissimilar import. State v. Gonzalez (Mar. 15, 2001), Cuyahoga App. No. 77338, citing State v. Rance,85 Ohio St.3d 632, 1999-Ohio-291.
 {¶ 40} In deciding whether an offense is one of "dissimilar import," the court must analyze the elements of each offense in the abstract to determine if the *Page 12 
elements "correspond to such a degree that the commission of one offense will [automatically] result in the commission of the other." Id., at 636. Johnson was charged in this case in counts one and two of alternative types of aggravated robbery.
 {¶ 41} Count one charged him with robbing Burton of his possessions while "brandishing" a deadly weapon. The other charged him with "inflicting serious physical harm" upon Burton in committing the robbery and as Burton tried to escape. Each of these two offenses contains a separate element, therefore, pursuant to the Rance test, they are of dissimilar import. State v. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333, 4|28 (appeal denied, 98 Ohio St.3d 1515,2003-Ohio-1572).
 {¶ 42} Similarly, in counts three and four, Johnson was charged with alternative types of felonious assault, i.e., causing "serious" physical harm, and causing physical harm "by means of a deadly weapon." Id., [30; State v. Gonzales, supra. Admittedly, this court reached a different result in State v. Brown, Cuyahoga App. No. 87651,2006-Ohio-6267, 50-51, which declined to address the applicability ofRance .[1] Nevertheless, appellate courts are constrained to follow the *Page 13 
decisions of the Ohio Supreme Court. Therefore, multiple convictions were appropriate. Cf., State v. Allen, Cuyahoga App. No. 82618,2003-Ohio-6908.
 {¶ 43} The trial court considered that only one continuous series of events occurred when it decided to impose concurrent sentences on the foregoing convictions; this was entirely within its discretion, and thus the sentence is proper. Cf., State v. Johnson, Hamilton App. No. C-050399, 2006-Ohio-6449; see also, State v. Terry (Aug. 29, 1997), Hamilton App. No. C-960548.
 {¶ 44} Accordingly, Johnson's fourth assignment of error also is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J.
ANTHONY O. CALABRESE, JR., P.J. and *Page 14 
ANN DYKE, J. CONCUR
[1] The test as set forth in Rance is problematic. In this case, although a "single act" occurred, Johnson was convicted of more than one offense, because, under Rance, it is difficult to imagine a situation in which consideration of the elements of crimes in the abstractever would correspond. Moreover, the test has been conflated with the analysis with respect to lesser included offenses. See, State v.Kvasne, 169 *Page 1